# State of Tennessee
## IN THE CHANCERY COURT OF POLK COUNTY

| | | |
|---|---|---|
| COPPER BASIN FEDERAL CREDIT UNION and CUMIS INSURANCE SOCIETY, INC., | ) ) ) ) | **RETURN TO CLERK AND MASTER** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| FISERV SOLUTIONS, INC. d/b/a INTEGRASYS | ) ) ) | Docket Number: 2011-CV-25  Part _____ |
| Defendant. | ) ) | |

## SUMMONS

TO:  Fiserv Solutions, Inc. d/b/a Integrasys, c/o its Registered Agent, The Prentice-Hall Corporation System, Inc., 2908 Poston Ave., Nashville, Tennessee, 37203

You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Chancery Court of Polk County, Tennessee in the above styled case. Your defense to this complaint must be filed in the office of the Clerk and Master of Polk County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WITNESSED and Issued this ___12th___ day of ___July___ 20__

By _Brenda Hatcher_

Kim Ingram, Clerk and Master

Deputy Clerk and Master

Attorneys for Plaintiff_____   James R. McKoon, Esquire

MCKOON & WILLIAMS

1300 Republic Centre, 633 Chestnut Street

Chattanooga, TN 37450-1300

Plaintiff's Address: _____ SAME

Received this _____ day of, _____, 20_____.

/S/ _____

Deputy Sheriff

**ADA FOR ASSISTANCE CALL 423-338-4522**

# State of Tennessee
County of Polk

I, Kim Ingram, Clerk and Master, in and for the State and County aforesaid, hereby certify that the within and foregoing is a true and correct copy of the original writ of summons issued in this case.

Kim Ingram, Clerk and Master

By _____   _____ D.C.

---

## OFFICER'S RETURN

☐     I certify that I served this summons together with the complaint as follows:

☐     On _____, 20_____, I delivered a copy of the summons and complaint to the
defendant, _____

_____

_____

☐     Failed to serve this summons within 30 days after its issuance because: _____

_____

_____

**Bill Davis, Sheriff**

_____
Deputy Sheriff

---

## NOTICE TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

---

# IN THE CHANCERY COURT FOR POLK COUNTY, TENNESSEE

COPPER BASIN FEDERAL CREDIT UNION )
and CUMIS INSURANCE SOCIETY, INC., )
           Plaintiff, )    No. 2011 CV-26
            )
v. )
            )
FISERV SOLUTIONS, INC., )
d/b/a INTEGRASYS )
            )
           Defendants. )

## COMPLAINT

Plaintiffs, Copper Basin Federal Credit Union ("CBFCU") and CUMIS Insurance Society, Inc. ("CUMIS"), file this action against the Defendant, Fiserv Solutions, Inc. d/b/a IntegraSys ("Fiserv"), and for its claims and causes of actions states as follows:

1.      Plaintiff, CBFCU, is a federal credit union with headquarters in Copperhill, Polk County, Tennessee.

2.      CUMIS is a mutual insurance company organized and existing under the laws of the State of Wisconsin. By way of assignment and subrogation, CUMIS is the holder of certain rights, title and interest in and to the claims of CBFCU against Fiserv.

3.      Fiserv is a Wisconsin corporation, which at all times material hereto, was doing business in the State of Tennessee. Its principal office is located at 255 Fiserv Drive, Brookfield, Wisconsin. Fiserv may be served with process via its Registered Agent, The Prentice-Hall Corporation System, Inc., 2908 Poston Ave., Nashville, Tennessee, 37203.

4.      This lawsuit concerns professional services provided by Fiserv to CBFCU in Polk County, Tennessee.

5.      Jurisdiction and venue are appropriate in this Court.

FILED
3:45 P M
JUL 1 2 2011
Kimberly A. Ingram, Clerk & Master
By _____ D.C.

## FACTS

6.    CBFCU is a credit union that is chartered to service any and all individuals with a connection to Polk, County, Tennessee, or Fannin County, Georgia.

7.    CBFCU acquired a credit union bond, bond number 035371-20, from CUMIS to provide coverage in the event of, inter alia, a computer attack on CBFCU's systems. By right of subrogation, CUMIS has acquired a right, title and interest in CBFCU's claims which are outlined below.

8.    CBFCU utilized Fiserv as its sole technical support and web defense firm. CBFCU also used Fiserv's data processing services to access the National ACH Banking System. CBFCU has relied upon Fiserv (or its predecessors) as its sole web defense and technical support firm since at least 1985.

9.    In early 2007, CBFCU entered into a renewal contract with Fiserv, d/b/a Integrasys, for the provision of data processing services. A copy of the contract between CBFCU and Fiserv is attached hereto as Exhibit A.

10.    Upon information and belief, the technical support and web defense services that Fiserv provided was separate and apart from the contract for data processing services.

11.    As part of the technical support and web defense services that it provided to CBFCU, Fiserv required that CBFCU purchase the Trend Micro Antivirus Firewall and Protection software.

12.    Although CBFCU paid for the Trend Micro Antivirus Protection software, Fiserv maintained exclusive access to such software, had all passwords to access such software, and controlled and maintained such software. CBFCU employees did not have access to the Trend Micro Antivirus Protection System, did not have passwords to the Trend Micro System, and

-2-

were not permitted by Fiserv to maintain or in any way access the Trend Micro Antivirus Protection System.

13.     The Trend Micro Antivirus Protection System subscription came up for renewal in May of 2009. CBFCU paid for its renewal subscription in a timely fashion prior to the expiration of the previous subscription.

14.     CBFCU informed Fiserv that it had, at Fiserv's insistence, renewed its subscription to the Trend Micro Antivirus software.

15.     In early July, 2009, members of CBFCU's staff contacted Fiserv and complained that they were seeing unusual numbers of "pop-up" ads on their computers. Fiserv accessed CBFCU's computers remotely twice in an attempt to correct this problem. Fiserv stated that the problem had been fixed.

16.     On or about July 14 and 15, 2009, CBFCU's system was attacked by computer hackers.

17.     The computer hackers introduced software into CBFCU's systems which allowed them to change user names and passwords in order to originate a series of transfers from CBFCU's account with Volunteer Corporate ("VolCorp") into a large number of privately owned accounts spread in banks across the United States.

18.     On or about July 15, 2009, CBFCU employees discovered the missing funds from the VolCorp account.

19.     CBFCU employees immediately contacted VolCorp in an attempt to recall the illegally transferred funds.

-3-

20.     CBFCU employees also immediately contacted Fiserv and informed them of the unauthorized transfers and their suspicion that the transfer had been initiated by a computer hacker through CBFCU's computer system.

21.     Without any Fiserv personnel on site and in an effort to ascertain what had happened, a CBFCU employee attempted to access the Trend Micro Antivirus Protection System. She was able to access the system after attempts at guessing the password that had been established by Fiserv.

22.     Upon accessing the Trend Micro Antivirus Protection System, CBFCU discovered that the Trend Micro Antivirus Protection System had not been activated by Fiserv.

23.     Upon seeing Fiserv's failure to activate the Trend Micro Antivirus Protection System, a CBFCU employee clicked the icon to activate the System. The Trend Micro Antivirus Protection System immediately activated, updated its virus definitions (which were more than 60 days old), and resumed protecting CBFCU's computers.

24.     CBFCU and VolCorp were successful in reclaiming some of the transferred funds. However, CBFCU's total loss as a result of the computer hack was $544,789.41.

25.     The Master Agreement between Fiserv and CBFCU provides that, inter alia, "IntegraSys's aggregate liability to Credit Union or any third party for any and all claims or obligations relating to this agreement shall be limited to the total fees paid by Credit Union to IntegraSys for the IntegraSys service resulting in such liability in the three-month period preceding the date the claim accrued."

<u>GROSS NEGLIGENCE</u>

26.     The foregoing paragraphs are hereby incorporated herein by reference as if fully restated herein.

-4-

27.     Upon information and belief, the web defense and technical support services that Fiserv was providing, particularly with regards to the Trend Micro Antivirus software, were separate services which were not governed by the Master Agreement between Fiserv and CBFCU.

28.     Fiserv, acting as a professional web defense and technical support firm, owed a duty of professional competency in providing web defense services and technical support to CBFCU.

29.     Fiserv breached that duty by failing to activate the Trend Micro Web Defense software.

30.     Fiserv breached that duty by failing to protect CBFCU from a computer incursion, despite the fact that it accessed CBFCU's computers remotely twice just prior to the attack and unauthorized transfers.

31.     Fiserv was grossly negligent in the execution of its duty to CBFCU.

32.     Upon information and belief, as a direct and proximate result of Fiserv's gross negligence, CBFCU suffered damages in the amount of $544,789.41.

<u>NEGLIGENCE</u>

33.     The foregoing paragraphs are hereby incorporated herein by reference as if fully restated herein.

34.     Pleading in the alternative, Fiserv was negligent in the execution of its duty to CBFCU.

35.     Upon information and belief, as a direct and proximate result of Fiserv's breach, CBFCU suffered damages in the amount of $544,789.41.

-5-

## BREACH OF CONTRACT

36.     The foregoing paragraphs are hereby incorporated as if fully restated herein.

37.     Pleading in the alternative, Fiserv entered into a contract with CBFCU for the provision of technical support and defense services to CBFCU.

38.     Fiserv breached that contract by failing to protect CBFCU from a computer incursion.

39.     Fiserv breached that contract by failing to take the most basic steps to protect CBFCU from a computer incursion when Fiserv did not activate the Trend Micro Antivirus Protection Software.

40.     The terms of the Master Agreement, particularly with regards to the limitation of Fiserv's Liability, were not negotiated.

41.     The limitation of Fiserv's liability in the Master Agreement is unconscionable, particularly in light of Fiserv's complete and total failure to take the most basic precautions to protect CBFCU from a web incursion by activating the Trend Micro Antivirus Protection Software. The terms of the Master Agreement which attempt to limit Fiserv's liability are therefore void and of no effect.

42.     As a direct and proximate result of Fiserv's breach, CBFCU has suffered damage in the amount of $544,789.41.

WHEREFORE, premises considered, CBFCU prays that:

A.      A summons be issued and Fiserv be required to respond within the time permitted by law;

B.      That a judgment be entered against Fiserv in the amount of $544,789.41 for gross negligence;

C.     That a judgment be entered against Fiserv for punitive damages in the amount to be established at trial and in no even less than $275,000.

D.     In the alternative, that a judgment be entered against Fiserv in the amount of $544,789.41 for negligence;

E.     In the alternative, that a judgment be entered declaring the liability limitation language in the Master Agreement void;

F.     That a judgment be entered against Fiserv for $544,789.41 for breach of contract;

G.     For pre- and post-judgment interest;

H.     That costs be assessed against Fiserv;

I.     A judgment be awarded against Fiserv for CBFCU's attorneys' fees; and

J.     For such other and further legal or equitable relief as the Court may grant.

This 12th day of July, 2011.

McKOON & WILLIAMS

By: _James R. McKoon_

James R. McKoon, BPR No. 09554
John R. Hegeman, BPR No. 023680
633 Chestnut Street, Suite 1300
Chattanooga, TN 37450
Telephone: (423) 756-6400
Facsimile: (423) 756-8600
*Attorneys for Plaintiffs*

-7-

# MASTER AGREEMENT

MASTER AGREEMENT ("**Agreement**") dated as of December 1, 2007 ("**Effective Date**") between Fiserv Solutions, Inc., a Wisconsin corporation d/b/a IntegraSys (with offices located at 2601 Network Boulevard, Suite 600, Frisco, TX 75034 ("**IntegraSys**"), and Copper Basin Federal Credit Union, a federal credit union with offices located at Highway 68 South, Copperhill, TN 37317 ("**Credit Union**").

IntegraSys and Credit Union hereby agree as follows:

1. <u>IntegraSys Services</u>. IntegraSys, itself and through its affiliates identified on the Exhibits, agrees to provide Credit Union, and Credit Union agrees to obtain from IntegraSys the services ("**Services**") and products ("**Products**") (collectively, "**IntegraSys Services**") described in the attached Exhibits. Exhibits attached as of the Effective Date are listed below. The Exhibits set forth specific terms and conditions applicable to the Services and/or Products. The parties may add services and products to this Agreement by signing an appropriate Exhibit to this Agreement.

    Exhibit A-Account Processing Services
    Exhibit B-Professional Services
    Exhibit C-Material Purchased Through IntegraSys
    Exhibit E-Software Products
    Exhibit G-Virtual Branch® Services
    Exhibit N-ConfirmIT™

2. <u>Fees for IntegraSys Services</u>. (a) <u>General</u>. Credit Union agrees to pay IntegraSys all of the following (collectively, "**Fees**"):

(i) fees for IntegraSys Services for the month as specified in the Exhibits;

(ii) Out-of-pocket and other additional charges for the month pursuant to Section 2(b).

(iii) Taxes as defined in Section 2(c).

Fees may be increased from time to time as set forth in the Exhibits. IntegraSys may increase its fees in excess of amounts listed in the Exhibits in the event that IntegraSys implements major system enhancements to comply with changes in law, government regulation, or industry practices.

(b) <u>Additional Charges</u>. Fees for out-of-pocket expenses, such as telephone, microfiche, courier, and other charges reasonably incurred by IntegraSys for goods or services obtained by IntegraSys for Credit Union's behalf shall be billed to Credit Union at cost plus the applicable IntegraSys administrative fee, if any, set forth in the Exhibits. Such out-of-pocket expenses may be changed from time to time upon notification of a fee change from a vendor/provider, and, as applicable, shall be incurred in accordance with IntegraSys' then-current corporate travel and expense policy.

(c) <u>Taxes</u>. IntegraSys shall add to each invoice any sales, use, excise, value added, and other taxes and duties however designated that are levied by any taxing authority relating to the IntegraSys Services ("**Taxes**"). In no event shall "Taxes" include taxes based upon IntegraSys' net income.

(d) <u>Payment Terms</u>. Fees are due and payable 10 days upon receipt of invoice. Credit Union shall pay IntegraSys through the Automated Clearing House unless otherwise set forth in the Exhibits. In the event any invoiced amounts remain unpaid 30 days after payment is due, Credit Union shall pay a monthly late charge of the lesser of 1.5% or the highest amount allowed by law. Credit Union shall neither make nor assert any right of deduction or set-off from Fees invoiced for IntegraSys Services. Any invoice submitted by IntegraSys shall be deemed correct unless Credit Union provides written notice to IntegraSys within 15 days of the invoice date specifying the nature of the disagreement.

(e) <u>Adjustment to Fees</u>. Upon 30 days notice and not more than once every 12 months, IntegraSys may notify Credit Union of an increase in the Fees by the percentage change in the U.S. Department of Labor, Consumer Price Index for All Urban Households or any substantially similar successor index ("CPI") over the period since the last adjustment

**≣IntegraSys·**

Exhibit A

to fees occurred (or the CPI as of the Effective Date if no prior adjustment has been made).

3. Confidentiality and Ownership. (a) Definitions.

(i) "Credit Union Information" means: (A) confidential plans, information, and other proprietary material of Credit Union that is marked with a restrictive legend, or if not so marked or is disclosed orally, is identified as confidential at the time of disclosure (and written confirmation thereof is promptly provided to IntegraSys); (B) customer lists and any information and data concerning the business and financial records of Credit Union's customers prepared by or for IntegraSys, or used in any way by IntegraSys in connection with the provision of IntegraSys Services (whether or not any such information is marked with a restrictive legend); and (C) any information and data received from Credit Union that IntegraSys reasonably ought to know is confidential (whether or not any such information is marked with a restrictive legend).

(ii) "IntegraSys Information" means: (A) confidential plans, information, research, development, trade secrets, business affairs (including that of any IntegraSys client, supplier, or affiliate), and other proprietary material of IntegraSys that is marked with a restrictive legend, or if not so marked or is disclosed orally, is identified as confidential at the time of disclosure (and written confirmation thereof is promptly provided to Credit Union); (B) IntegraSys' information security plans, disaster recovery plans, proprietary computer programs, including custom software modifications, software documentation and training aids, and all data, code, techniques, algorithms, methods, logic, architecture, and designs embodied or incorporated therein, and the terms and conditions of this Agreement (whether or not any such information is marked with a restrictive legend); and (C) any information and data received from IntegraSys that Credit Union reasonably ought to know is confidential (whether or not any such information is marked with a restrictive legend).

(iii) "Information" means Credit Union Information and IntegraSys Information. No obligation of confidentiality applies to any Information that the receiving party ("Recipient") (A) already possesses without obligation of confidentiality; (B) develops independently; or (C) rightfully receives without obligation of confidentiality from a third party. No obligation of confidentiality applies to any Information that is, or becomes, publicly available without breach of this Agreement.

(b) Obligations. Recipient agrees to hold as confidential all Information it receives from the disclosing party ("Discloser"). All Information shall remain the property of Discloser or its suppliers and licensors. Recipient will use the same care and discretion to avoid disclosure of Information as it uses with its own similar information that it does not wish disclosed, but in no event less than a reasonable standard of care. Recipient may only use Information in accordance with the purpose of this Agreement. IntegraSys specifically agrees that it will not use or disclose any non-public personal information about Credit Union's customers in any manner prohibited by Title V of the Gramm-Leach-Bliley Act or the regulations issued thereunder ("GLB"). Recipient may disclose Information to: (i) its employees and employees of permitted subcontractors and affiliates who have a need to know; and (ii) any other party with Discloser's prior written consent. Before disclosure to any of the above parties, Recipient will have a written agreement with such party sufficient to require that party to treat Information in accordance with this Agreement. Recipient may disclose Information to the extent required by law. However, Recipient agrees to give Discloser prompt notice, if legally permissible, so that Discloser may seek a protective order. The provisions of this sub-section survive any termination or expiration of this Agreement.

(c) Residuals. Nothing contained in this Agreement shall restrict Recipient from the use in its business of any ideas, concepts, know-how, or techniques contained in Information that are related to Recipient's business activities and retained in the unaided memory of Recipient's employees.

(d) IntegraSys System and Credit Union Systems. IntegraSys systems used in the delivery of Services (the "IntegraSys System") and Credit Union's networks and computer systems ("Credit Union Systems") contain information and computer

**≣IntegraSys·**

software that are proprietary and confidential information of the respective parties, their suppliers, and licensors. Each party agrees not to attempt to circumvent the devices employed by the other party to prevent unauthorized access thereto, including, but not limited to, alterations, decompiling, disassembling, modifications, and reverse engineering thereof.

(e) Ownership. With the exception of Credit Union Information, all information, reports, studies, object or source code, flow charts, diagrams, and other tangible or intangible material of any nature whatsoever produced by IntegraSys or jointly with Credit Union or by any of their employees or agents, through or as a result of or related to any of the Services performed or Products provided hereunder, shall be the sole and exclusive property of IntegraSys or its corporate parent. Credit Union shall execute documents reasonably required by IntegraSys to perfect such rights. Credit Union shall be entitled to use all such work product in accordance with the terms and conditions of this Agreement.

4. Information Security. (a) General. IntegraSys has implemented and shall maintain appropriate measures designed to meet the objectives of the applicable guidelines establishing information security standards as adopted by any federal regulatory agencies having jurisdiction over Credit Union's affairs ("**Guidelines**"). These measures include appropriate disposal of consumer information as required, and taking appropriate actions to address incidents of unauthorized access to Credit Union's sensitive customer information, including notification to Credit Union as soon as possible of any such incident. Without limiting the foregoing, IntegraSys' information security program is designed to: (i) ensure the security and confidentiality of customer information; (ii) protect against any anticipated threats or hazards to the security or integrity of such information; and (iii) protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any customer. Upon Credit Union's written request, IntegraSys shall provide Credit Union with copies of any associated audit reports, summaries of test results or equivalent measures taken by IntegraSys to ensure that its information security program meets the objectives of the Guidelines.

(b) Credit Union Requirements. As mutually agreed and at Credit Union's expense, IntegraSys shall make commercially reasonable modifications to its information security program to conform to Credit Union's information security requirements, as they exist from time to time.

(c) IntegraSys Plan. Within 30 days of Credit Union's written request, IntegraSys shall provide to Credit Union a summary copy of IntegraSys' written information security plan, and thereafter upon Credit Union's request will provide updates on the status of its information security plan.

(d) Credit Union Notification. Credit Union agrees that it shall notify IntegraSys as soon as possible upon becoming aware of any incident of unauthorized access to any Information or the IntegraSys System.

5. Hiring and Employment. (a) Background Checks. IntegraSys shall not knowingly permit any IntegraSys employee to have access to the premises, records or data of Credit Union when such employee: (i) uses drugs illegally; or (ii) has been convicted of a crime in connection with a dishonest act or a breach of trust, as set forth in Section 19 of the Federal Deposit Insurance Act, 12 U.S.C. 1829(a). Consistent with IntegraSys' employment practices, newly hired IntegraSys employees: (x) as from 1996, are required to pass a pre-employment criminal background check; and (y) as from 1993, are required to pass a pre-employment drug screening.

(b) Equal Employment. Each party agrees that it shall not discriminate against any employee or applicant for employment because of race, creed, color, age, sex, national origin, marital status, liability for service in the armed forces, disability due to veteran status, status as veteran of the Vietnam era, or the handicapped, and it shall comply with all applicable requirements of the Equal Opportunity Clause set forth in Executive Order 11246, as amended, and its implementing instructions, as well as the Rehabilitation Act of 1973 and the Vietnam Era Veterans' Readjustment Assistance Act of 1974.

6. Regulatory Agencies, Regulations and Legal Requirements. (a) Credit Union Files. Records maintained and produced for Credit Union ("**Credit Union Files**") may be subject to examination by

**≣IntegraSys**

such Federal, State, or other governmental regulatory agencies as may have jurisdiction over Credit Union's business to the same extent as such records would be subject if maintained by Credit Union on its own premises. Credit Union agrees that IntegraSys is authorized to give all reports, summaries, or information contained in or derived from the data or information in IntegraSys' possession relating to Credit Union when formally requested to do so by an authorized regulatory or government agency. Credit Union agrees to pay IntegraSys its then-current rates for all research work resulting from regulatory requests, government agency requests, and legal process requests such as subpoena or search warrant, whether issued during or after the term of this Agreement.

(b) Compliance with Regulatory Requirements. Credit Union agrees to comply with regulatory and legal requirements applicable to Credit Union's receipt of IntegraSys Services, which may include without limitation:

(i) submitting a copy of this Agreement to the appropriate regulatory agencies prior to the date Services commence;
(ii) providing adequate notice to the appropriate regulatory agencies of the termination of this Agreement or any material changes in Services;
(iii) retaining records of its accounts as required by regulatory authorities;
(iv) obtaining and maintaining, at its own expense, any Fidelity Bond required by any regulatory or governmental agency; and
(v) maintaining, at its own expense, such casualty and business interruption insurance coverage for loss of records from fire, disaster, or other causes, and taking such precautions regarding the same, as may be required by regulatory authorities.

7.     Warranties and Indemnification. (a) By IntegraSys.

(i) IntegraSys represents and warrants that: (A) no contractual obligations exist that would prevent IntegraSys from entering into this Agreement; (B) IntegraSys has the requisite authority to execute, deliver, and perform IntegraSys' obligations under this Agreement; (C) Services will conform to the specifications set forth in the Exhibits; (D) IntegraSys will perform Credit Union's work accurately

provided that Credit Union supplies accurate data and information, and follows the procedures described in all IntegraSys documentation and notices; (E) IntegraSys personnel will exercise due care in provision of Services; (F) functionality provided by the IntegraSys System will enable Credit Union to comply in all material respects with Federal regulations generally applicable to IntegraSys' clients in the industry in which the functionality is intended to be used; and (G) IntegraSys will comply with Federal regulations applicable to IntegraSys' performance of its obligations under this Agreement. In the event of an error or other default caused by IntegraSys personnel, systems, or equipment, IntegraSys shall correct such error or default at no additional charge to Credit Union, provided that Credit Union supplies IntegraSys with a written request for correction of the error within 7 days after Credit Union's receipt of the work containing the error. Work reprocessed due to errors in data supplied by Credit Union, on Credit Union's behalf by a third party, or by Credit Union's failure to follow procedures set forth by IntegraSys shall be billed to Credit Union at IntegraSys' then current time and material rates.

(ii) IntegraSys shall indemnify Credit Union and hold it harmless against any third party claim or action that alleges that the IntegraSys System infringes a United States patent, copyright, or other proprietary right of such third party ("Infringement Claim"). Credit Union agrees to notify IntegraSys promptly of any Infringement Claim and grants IntegraSys the sole right to control the defense and disposition of all Infringement Claims. Credit Union shall provide IntegraSys with reasonable cooperation and assistance in the defense of any Infringement Claim. The obligations set forth in this paragraph are IntegraSys' entire liability and Credit Union's sole and exclusive remedy for any Infringement Claim.

THE WARRANTIES STATED ABOVE AND IN THE EXHIBITS, IF ANY, ARE LIMITED WARRANTIES AND ARE THE ONLY WARRANTIES MADE BY INTEGRASYS. CREDIT UNION ACKNOWLEDGES THAT IT HAS INDEPENDENTLY EVALUATED THE INTEGRASYS SERVICES AND THEIR APPLICATION TO CREDIT UNION'S NEEDS.

**⊞IntegraSys**

INTEGRASYS DOES NOT MAKE, AND CREDIT UNION HEREBY EXPRESSLY WAIVES, ALL OTHER WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, AND FROM A COURSE OF DEALING OR USAGE OR TRADE.

(b) By Credit Union.

(i) Credit Union represents and warrants that: (A) no contractual obligations exist that would prevent Credit Union from entering into this Agreement; (B) it has complied with all applicable regulatory requirements; and (C) it has requisite authority to execute, deliver, and perform this Agreement.

(ii) Credit Union shall indemnify and hold harmless IntegraSys, its officers, directors, employees, and affiliates against: (A) any claims or actions arising out of the use by Credit Union of the IntegraSys System in a manner other than that provided in this Agreement; and (B) any and all claims by third parties through Credit Union arising out of the performance and non-performance of IntegraSys Services by IntegraSys, provided that the indemnity listed in clause (B) hereof shall not preclude Credit Union's recovery of damages from IntegraSys pursuant to the terms and subject to the limitations of this Agreement.

8. Limitation of Liability. IN NO EVENT SHALL INTEGRASYS BE LIABLE FOR LOSS OF GOODWILL, OR FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR TORT DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF WHETHER SUCH CLAIM ARISES IN TORT OR IN CONTRACT. EXCEPT FOR CLAIMS RELATED TO PROPRIETARY RIGHTS OR PAYMENT OBLIGATIONS, NEITHER PARTY MAY ASSERT ANY CLAIM AGAINST THE OTHER RELATED TO THIS AGREEMENT MORE THAN 2 YEARS AFTER SUCH CLAIM ACCRUED. INTEGRASYS' AGGREGATE LIABILITY TO CREDIT UNION OR ANY THIRD PARTY FOR ANY AND ALL CLAIMS OR OBLIGATIONS RELATING TO THIS AGREEMENT SHALL BE LIMITED TO THE TOTAL FEES PAID BY CREDIT UNION TO INTEGRASYS FOR THE INTEGRASYS SERVICE RESULTING IN SUCH LIABILITY IN THE 3 MONTH PERIOD PRECEDING THE DATE THE CLAIM ACCRUED.

9. Term and Termination. (a) Term. The initial term of this Agreement shall end November 30, 2012. Unless written notice of non-renewal is provided by either party at least 1 year prior to expiration of the initial term or any renewal term, this Agreement shall automatically renew for additional term(s) of 5 years. This Agreement shall be effective on the Effective Date.

(b) Material Breach; Failure to Pay.

(i) Either party may terminate this Agreement in the event of a material breach by the other party not cured within 90 days following written notice stating, with particularity and in reasonable detail, the nature of the claimed breach.

(ii) In the event any invoice remains unpaid by Credit Union 30 days after due, IntegraSys may terminate this Agreement and/or Credit Union's access to and use of IntegraSys Services.

(c) Remedies. Remedies contained in this Section 9 are cumulative and are in addition to the other rights and remedies available to IntegraSys under this Agreement, by law or otherwise.

(d) Defaults. If Credit Union:

(i) fails to cure its material breach, or fails to pay amounts due, each as set forth in Section 9(b);
(ii) deconverts any data or information from the IntegraSys System without IntegraSys' prior written consent or in violation of this Agreement; or
(iii) commits an act of bankruptcy or becomes the subject of any proceeding under the Bankruptcy Code or becomes insolvent or if any substantial part of Credit Union's property becomes subject to any levy, seizure, assignment, application, or sale for or by any creditor or governmental agency;

then, in any such event, IntegraSys may, upon written notice, terminate this Agreement and be entitled to recover from Credit Union as liquidated damages an amount equal to the present value of all

**≡IntegraSys®**

payments remaining to be made hereunder for the remaining unused term of this Agreement. For purposes of the preceding sentence, present value shall be computed using the "prime" rate (as published in *The Wall Street Journal*) in effect at the date of termination and "all payments remaining to be made" shall be calculated by multiplying the average monthly invoices for the 6 months immediately preceding the date of termination by the remaining months of the term. Credit Union agrees to reimburse IntegraSys for any expenses IntegraSys may incur, including reasonable attorneys' fees, in taking any of the foregoing actions.

(e) Convenience; Early Termination. Credit Union may terminate this Agreement by paying a termination fee based on the remaining unused term of this Agreement, the amount to be determined by multiplying the average of Credit Union's monthly invoices for each IntegraSys Service received by Credit Union during the 6-month period preceding the effective date of termination (or if no monthly invoice has been received, the sum of the estimated monthly billing for each IntegraSys Service to be received hereunder) by 80% times the remaining months of the term, plus any unamortized conversion fees or third party costs existing on IntegraSys' books on the date of termination.

(f) Liquidated Damages. Credit Union understands and agrees that IntegraSys losses incurred as a result of early termination of the Agreement would be difficult or impossible to calculate as of the effective date of termination since they will vary based on, among other things, the number of clients using the IntegraSys System on the date the Agreement terminates. Accordingly, the amounts set forth in Sections 9(d) and (e) represent Credit Union's agreement to pay and IntegraSys' agreement to accept as liquidated damages (and not as a penalty) such amount for any such termination.

10. Dispute Resolution. (a) Informal. Before initiating arbitration or other legal action against the other relating to a dispute herein, the parties agree to work in good faith to resolve disputes and claims arising out of this Agreement. To this end, either party may request that each party designate an officer or other management employee with authority to bind such party to meet to resolve the dispute or claim. If the dispute is not resolved within 30 days of the commencement of informal efforts under this paragraph, either party may pursue formal

dispute resolution. This paragraph will not apply if: (i) expiration of the applicable time for bringing an action is imminent; or (ii) injunctive or other equitable relief is necessary to protect a party's proprietary rights.

(b) Arbitration. Except with respect to disputes arising from a misappropriation or misuse of either party's proprietary rights, any dispute or controversy arising out of this Agreement or its interpretation that is not resolved under Section 10(a), may be submitted to and resolved by arbitration under the then prevailing rules of Judicial Arbitration and Mediation Services, Inc. (JAMS). A party seeking arbitration shall submit written notice of its request for arbitration to the other party, setting forth the specifics of the claim being made. If the parties agree to arbitrate such dispute, a formal demand for arbitration shall be submitted to JAMS by such requesting party. The arbitration shall be heard before an arbitrator mutually agreeable to the parties; provided, that if the parties cannot agree on the choice of arbitrator within 10 days after the parties agree to arbitrate, then the arbitration shall be heard by 3 arbitrators, 1 chosen by each party, and the third chosen by those 2 arbitrators. The arbitrators will be selected from a panel of persons having experience with and knowledge of information technology and at least 1 of the arbitrators selected will be an attorney. Discovery shall not be permitted. A hearing on the merits of all claims for which arbitration is sought by either party shall be commenced not later than 60 days from the date demand for arbitration is submitted to JAMS. The arbitrator(s) must render a decision within 10 days after the conclusion of such hearing. Any award in such arbitration shall be final and binding upon the parties and the judgment thereon may be entered in any court of competent jurisdiction.

(c) Applicable Law. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§1–16 and the Federal Rules of Evidence. The arbitrators shall apply the substantive law of the State of New York, without reference to provisions relating to conflict of laws. The arbitrators shall not have the power to alter, modify, amend, add to, or subtract from any term or provision of this Agreement, nor to grant any extension, renewal, or continuance of this Agreement. The arbitrators shall have the authority to grant any legal remedy available had the parties submitted the dispute to a judicial proceeding.

**≣IntegraSys®**

(d) Location. If arbitration is used to resolve any disputes between the parties, the proceedings to resolve any such dispute shall be held in the headquarters city of the party receiving the request for arbitration from the other party.

11. Insurance. (a) General. During the term of this Agreement, IntegraSys shall carry and maintain the insurance policies set forth below with insurance companies rated "A-" or higher by A. M. Best Company or, if no longer available, a similar rating company.

(i) Commercial General Liability, including contractual liability insurance, covering claims arising out of bodily injury and property damage in an amount of $1 million per occurrence and $2 million general aggregate.

(ii) Commercial Crime covering employee dishonesty in an amount of $5 million.

(iii) All-risk property coverage including Extra Expense and Business Income coverage.

(iv) Workers Compensation as mandated or allowed by the laws of the state in which Services are being performed, including $1 million coverage for Employer's Liability.

(v) Commercial Umbrella Liability which shall be excess above the liability coverage required in subsections (a)(i) and (iv) above, with per occurrence and aggregate limits of $5 million.

(b) Certificates. IntegraSys agrees to provide Credit Union with a certificate of insurance as evidence of such coverage upon Credit Union's written request. Such certificate of insurance shall provide that the insurance required above shall not be cancelled or materially amended without 30 days prior written notice to Credit Union.

12. Audit. (a) General. IntegraSys employs an internal auditor responsible for ensuring the integrity of its processing environments and internal controls. In addition, IntegraSys provides for periodic independent audits of its operations, which shall include an annual SAS-70 Type II audit to the extent required by law or regulation. IntegraSys shall provide Credit Union with a copy of such independent audit report of the IntegraSys service center providing Services within a reasonable time

after its completion and shall charge each client a fee based on the pro rata cost of such audit. If material deficiencies affecting the Services are noted in such audit report, IntegraSys will develop and implement an action plan to address and resolve any such deficiencies within a commercially reasonable time at IntegraSys' expense.

(b) Regulatory. As specifically permitted by law and regulation, IntegraSys acknowledges and agrees that regulators shall be permitted to audit IntegraSys' performance under this Agreement at any time during IntegraSys' normal business hours.

13. General. (a) Binding Agreement; Assignment. This Agreement is binding upon the parties and their respective successors and permitted assigns. Neither this Agreement nor any interest may be sold, assigned, transferred, pledged, or otherwise disposed of by Credit Union, whether pursuant to change of control, by operation of law or otherwise, without IntegraSys' prior written consent. Credit Union agrees that IntegraSys may subcontract any services to be performed hereunder; provided that any such subcontractors shall be required to comply with all applicable terms and conditions of this Agreement, and IntegraSys shall remain primarily liable for the performance of any such subcontractors.

(b) Entire Agreement; Amendments. This Agreement, including its Exhibits and Appendices (if any), which are expressly incorporated herein by reference, constitutes the complete and exclusive statement of the agreement between the parties as to the subject matter hereof and supersedes all previous agreements with respect thereto. Each party hereby acknowledges that it has not entered into this Agreement in reliance upon any representation made by the other party not embodied herein. Modifications of this Agreement must be in writing and signed by duly authorized representatives of the parties. In the event the provisions of any Exhibit conflict with the provisions of this Agreement, this Agreement shall control unless the applicable Exhibit expressly provides that its provisions control.

(c) Severability. If any provision of this Agreement is held to be unenforceable or invalid, the other provisions shall continue in full force and effect.

≣IntegraSys

(d) Governing Law; Jury Trial Waiver. This Agreement will be governed by the substantive laws of the State of New York, without reference to provisions relating to conflict of laws. The United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement. Both parties agree to waive any right to have a jury participate in the resolution of any dispute or claim between the parties or any of their respective affiliates arising under this Agreement.

(e) Force Majeure. Neither party shall be responsible for delays or failures in performance resulting from acts of God, acts of civil or military authority, fire, flood, strikes, war, epidemics, pandemics, shortage of power, or other acts or causes reasonably beyond the control of that party. The party experiencing the force majeure event agrees to give the other party notice promptly following the occurrence of a force majeure event, and to use diligent efforts to re-commence performance as promptly as commercially practicable.

(f) Notices. Any written notice required or permitted to be given hereunder shall be given by: (i) Registered or Certified Mail, Return Receipt Requested, postage prepaid; (ii) confirmed facsimile; or (iii) nationally recognized overnight courier service to the other party at the addresses listed on the cover page or to such other address or person as a party may designate in writing. All such notices shall be effective upon receipt.

(g) No Waiver. The failure of either party to insist on strict performance of any of the provisions hereunder shall not be construed as the waiver of any subsequent default of a similar nature.

(h) Prevailing Party. The prevailing party in any arbitration, suit, or action brought against the other party to enforce the terms of this Agreement or any rights or obligations hereunder, shall be entitled to receive its reasonable costs, expenses, and attorneys' fees of bringing such arbitration, suit, or action.

(i) Survival. All rights and obligations of the parties under this Agreement that, by their nature, do not terminate with the expiration or termination of this Agreement shall survive the expiration or termination of this Agreement.

(j) Exclusivity. Credit Union agrees that IntegraSys shall be the sole and exclusive provider of the services that are the subject matter of this Agreement. For purposes of the foregoing, the term "Credit Union" shall include Credit Union affiliates. Credit Union agrees not to enter into an agreement with any other entity to provide these services (or similar services), and not to perform these services (or similar services) for itself, during the term of this Agreement without IntegraSys' prior written consent. If Credit Union acquires another entity, the exclusivity provided to IntegraSys hereunder shall take effect with respect to such acquired entity as soon as practicable after expiration or earlier termination of such acquired entity's previously existing arrangement for these services. If Credit Union is acquired by another entity, the exclusivity provided to IntegraSys hereunder shall apply with respect to the level or volume of services provided immediately prior to the signing of the definitive acquisition agreement relating to such acquisition and shall continue with respect to the level or volume of such services until any termination or expiration of this Agreement.

(k) Publicity. Credit Union and IntegraSys shall have the right to make general references about each other and the type of services being provided hereunder to third parties, such as auditors, regulators, financial analysts, and prospective customers and clients, provided that in so doing Credit Union or IntegraSys does not breach Section 3 of this Agreement. The parties may mutually agree on a press release relating to the execution of this Agreement. In conjunction with this, the party initiating such release shall give the other party a reasonable opportunity to review and comment on the content thereof prior to its release.

(l) Independent Contractors. Credit Union and IntegraSys expressly agree they are acting as independent contractors and under no circumstances shall any of the employees of one party be deemed the employees of the other for any purpose. This Agreement shall not be construed as authority for either party to act for the other party in any agency or other capacity, or to make commitments of any kind for the account of or on behalf of the other except as expressly authorized herein.

(m) No Third Party Beneficiaries. No third party shall be deemed to be an intended or unintended third party beneficiary of this Agreement.

**≣IntegraSys**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

For Credit Union:                                    For IntegraSys:

Copper Basin Federal Credit Union                    Fiserv Solutions, Inc. d/b/a IntegraSys

By: _Butt Deal_____                              By: _____

Name: _Brett Deal_____                              Name: __David V. Campbell__

Title: _CEO_____                               Title: __Senior Vice President__

Date: _1/22/07_____                               Date: __3/7/07_____

IntegraSys®

# APPENDIX A
## MASTER AGREEMENT SERVICES TERMS

These Master Agreement Services Terms ("Services Terms") dated as of December 1, 2007 ("Services Terms Effective Date"), are hereby incorporated into the Agreement entered into between Fiserv Solutions, Inc. d/b/a IntegraSys ("IntegraSys") and Copper Basin Federal Credit Union ("Credit Union") as of December 1, 2007 (as amended through the date hereof, the "Agreement"). In the event of a conflict between these Services Terms and the Agreement, these Services Terms shall control unless the applicable Exhibit expressly provides that its provisions control. Unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned in the Agreement.

---

1. **Applicability.** These Services Terms shall apply to the following Services, and any other processing or hosted Services, to the extent any such Services are added as Exhibits to the Agreement:

- Account Processing Services
- Virtual Branch® Services
- ConfirmIT™

2. **Additional Services.** (a) **Implementation Services.** For the fees, if any, set forth in the Exhibits, IntegraSys will provide Implementation Services to the extent applicable to the Services. "**Implementation Services**" means services: (i) to convert Credit Union's existing applicable data and/or information to the Services, and/or (ii) to implement the Services. Credit Union agrees to provide all necessary cooperation, information and assistance in connection with Implementation Services to facilitate conversion and/or implementation. Credit Union is responsible for all out-of-pocket expenses reasonably incurred by IntegraSys in connection with Implementation Services.

(b) **Training Services.** To the extent applicable to the IntegraSys Services, IntegraSys shall provide training, training aids, user manuals, and other documentation for Credit Union's use as IntegraSys finds necessary to enable Credit Union personnel to become familiar with IntegraSys Services, for the fees, if any, set forth in the Exhibits. If requested by Credit Union, classroom training in the use and operation of IntegraSys Services will be provided at a training facility designated by IntegraSys.

3. **IntegraSys Obligations.** (a) **Credit Union Policies.** While assigned to provide Services at a Credit Union location or otherwise visiting Credit Union's facilities, IntegraSys employees will: (i) comply with Credit Union's reasonable safety and security procedures and other reasonable Credit Union rules applicable to Credit Union personnel at those facilities to the extent all such procedures and rules are provided to IntegraSys in writing and in advance, (ii) comply with all reasonable requests of Credit Union personnel, as applicable, pertaining to personal and professional conduct, and (iii) otherwise conduct themselves in a professional and businesslike manner.

(b) **Changes.** IntegraSys may make changes in its methods of delivering the Services, including but not limited to operating procedures, type of equipment or software resident at, and the location of IntegraSys' service center(s). IntegraSys will notify Credit Union prior to implementing any material change that affects Credit Union's normal operating procedures, reporting, or internal service costs.

(c) **Credit Union Systems Access.** If IntegraSys accesses Credit Union Systems, IntegraSys will: (i) use this access only to provide IntegraSys Services to Credit Union; and (ii) ensure that the IntegraSys System includes up-to-date anti-viral software designed to prevent viruses from reaching Credit Union Systems through the IntegraSys System.

4. **Credit Union Obligations.** (a) **Procedures.** Credit Union agrees to comply with IntegraSys' procedures and operating instructions for use of Services and the IntegraSys System.

(b) **Communication Lines, Terminals, Equipment, Software.** Credit Union will provide at its own expense or procure from IntegraSys all communication lines, terminals, equipment, computer software, and interface devices (collectively, "**Credit Union Equipment**") required to access the IntegraSys System and to transmit and receive data and information between Credit Union's

**≣IntegraSys**

location(s), IntegraSys' service center(s), and/or other necessary location(s). All Credit Union Equipment is subject to approval by IntegraSys and shall be compatible with the IntegraSys System. If Credit Union has elected to provide such items itself, IntegraSys shall provide Credit Union with a list of compatible equipment and software. Credit Union agrees to pay IntegraSys' standard fee for recertification of the IntegraSys System resulting from Credit Union's use of non-compatible Credit Union Equipment. If IntegraSys provides such items, Credit Union agrees to pay charges relating to the installation and use of Credit Union Equipment as set forth in the Exhibits.

(c) <u>Input</u>. Credit Union shall be solely responsible for the input, transmission, or delivery to and from IntegraSys (whether delivered to or from Credit Union site(s) or any applicable clearinghouse, regulatory agency, or Federal Reserve Bank) of all information and data required by IntegraSys to perform Services unless Credit Union has retained IntegraSys to handle such responsibilities, as specifically set forth in the Exhibits. The information and data shall be provided in a format and manner approved by IntegraSys. Credit Union shall determine and be responsible for the authenticity and accuracy of all information and data submitted to IntegraSys.

(d) <u>Credit Union Personnel</u>. Credit Union shall designate appropriate Credit Union personnel for training in the use of the Services, shall supply IntegraSys with reasonable access to Credit Union's site during normal business hours for Implementation Services, and shall cooperate with IntegraSys personnel in their performance of Services.

(e) <u>Credit Union Review</u>. Credit Union shall review all reports furnished by IntegraSys for accuracy, and shall work with IntegraSys to reconcile any out of balance conditions or discrepancies.

(f) <u>Credit Union Systems</u>. Credit Union shall ensure that Credit Union Systems: (i) are capable of passing and/or accepting data from and/or to the IntegraSys System, and (ii) include up-to-date anti-viral software designed to prevent viruses from reaching the IntegraSys System through Credit Union Systems.

5. <u>Disaster Recovery</u>. (a) <u>General</u>. IntegraSys maintains a disaster recovery plan ("<u>Disaster Recovery Plan</u>") for each Service. A "<u>Disaster</u>" shall mean any unplanned interruption of the operations of or inaccessibility to IntegraSys' service center in which IntegraSys, using reasonable judgment, requires relocation of processing to a recovery location. IntegraSys shall notify Credit Union as soon as possible after the occurrence of a Disaster and shall comply with the Disaster Recovery Plan. IntegraSys shall move the processing of Credit Union's standard services to a recovery location as expeditiously as possible and shall coordinate the cut-over to back-up telecommunication facilities with the appropriate carriers. Credit Union shall maintain adequate records of all transactions during the period of service interruption and shall have personnel available to assist IntegraSys in implementing the switchover to the recovery location. During a Disaster, optional or on-request services shall be provided by IntegraSys only to the extent adequate capacity exists at the recovery location and only after stabilizing the provision of base services.

(b) <u>Communications</u>. IntegraSys shall work with Credit Union to establish a plan for alternative communications in the event of a Disaster.

(c) <u>Disaster Recovery Test</u>. IntegraSys shall test the Disaster Recovery Plan periodically. Credit Union agrees to participate in and assist IntegraSys with such test, if requested by IntegraSys. Upon Credit Union's request, test results will be made available to Credit Union's management, regulators, auditors, and insurance underwriters.

(d) <u>Credit Union Plans</u>. IntegraSys agrees to release information necessary to allow Credit Union's development of a disaster recovery plan that operates in concert with the Disaster Recovery Plan.

(e) <u>No Warranty</u>. Credit Union understands and agrees that the Disaster Recovery Plan is designed to minimize, but not eliminate, risks associated with a Disaster affecting IntegraSys' service center(s). No performance standards shall be applicable for the duration of a Disaster. Credit Union maintains responsibility for adopting a disaster recovery plan relating to disasters affecting Credit Union's facilities and for securing business interruption insurance or other insurance necessary for Credit Union's protection.

**⊞IntegraSys**

6. Deconversion Charges. Credit Union agrees to pay IntegraSys' then-current deconversion charges in connection with Credit Union's deconversion from the IntegraSys System.

7. Lost Records. If Credit Union's records or other data submitted for processing are lost or damaged as a result of any failure by IntegraSys, its employees, or agents to exercise reasonable care to prevent such loss or damage, IntegraSys' liability on account of such loss or damages shall not exceed the reasonable cost of reproducing such records or data from exact duplicates thereof in Credit Union's possession.

8. Termination. (a) Return of Credit Union Files. Upon expiration or termination of the Agreement or any Exhibit, IntegraSys shall furnish to Credit Union such copies of Credit Union Files as Credit Union may request in a IntegraSys standard format, and shall provide such information and assistance as is reasonable and customary to enable Credit Union to deconvert from the IntegraSys System; provided, however, that Credit Union consents and agrees and authorizes IntegraSys to retain Credit Union Files until: (i) IntegraSys is paid in full for all amounts due and all IntegraSys Services provided through the date such Credit Union Files are returned to Credit Union; (ii) IntegraSys is paid its then standard rates for the services necessary to return such Credit Union Files; (iii) if the Agreement or applicable Exhibit is being terminated, IntegraSys is paid any applicable termination fee pursuant to Section 9(d) or (e) of the Agreement; and (iv) Credit Union has returned to IntegraSys all IntegraSys Information. Unless directed by Credit Union in writing to the contrary, IntegraSys shall be permitted to destroy Credit Union Files any time after 30 days from the final use of Credit Union Files for processing.

(b) Miscellaneous. Credit Union is responsible for the deinstallation and return shipping of any IntegraSys-owned equipment located on Credit Union's premises.

IN WITNESS WHEREOF, the parties have caused these Services Terms to be executed by their duly authorized representatives as of the Services Terms Effective Date.

For Credit Union:

Copper Basin Federal Credit Union

By: _Brett Deal_

Name: _Brett Deal_

Title: _CEO_

Date: _1/22/07_

For IntegraSys:

Fiserv Solutions, Inc. d/b/a IntegraSys

By: _[signature]_

Name: _David J. Campbell_

Title: _Senior Vice President_

Date: _3/7/07_

≣IntegraSys®

## Account Processing Services

Credit Union agrees with IntegraSys as follows:

1. **Services.** IntegraSys will provide Credit Union the Account Processing Services ("Account Processing Services") specified in **Exhibit A – 1**.

2. **Fees.** Credit Union shall pay IntegraSys fees and other charges for Account Processing Services specified in **Exhibit A – 2**.

3. **Responsibility for Accounts.** Credit Union shall be responsible for balancing its accounts each business day and notifying IntegraSys immediately of any errors or discrepancies. Provided that Credit Union immediately notifies IntegraSys of any discrepancy in Credit Union's accounts, IntegraSys shall, at its expense, promptly recompute accounts affected by discrepancies solely caused by the IntegraSys Systems or provide for another mutually agreeable resolution. IntegraSys will use its commercially reasonable efforts to correct errors attributable to Credit Union or Credit Union's other third party servicers. Reconstruction of error conditions attributable to Credit Union or to third parties acting on Credit Union's behalf will be done at prevailing rates as set forth in **Exhibit A – 2**.

4. **Monthly Histories.** As an Optional Service, IntegraSys maintains history, where applicable, for its Credit Unions. These histories can be used to reconstruct Credit Union Files in an emergency. However, in order to permit prompt and accurate reconstruction of accounts, Credit Union agrees to retain at all times and make available to IntegraSys upon request the most recent data printout(s) received from IntegraSys, together with copies or other accurate and retrievable records of all transactions to be reflected on the next consecutive printout(s).

5. **Hours of Operation.** Account Processing Services will be available for use by Credit Union during standard IntegraSys business hours, excluding holidays, as specified in **Exhibit A – 1**. Account Processing Services may be available during additional hours, during which time Credit Union may use Services at its option and subject to additional charges.

6. **Protection of Data.** (a) For the purpose of compliance with applicable government regulations, IntegraSys has an operations backup center. Copies of transaction files are maintained by IntegraSys off premises in secured vaults.

(b) IntegraSys provides systems security utilizing commercially reasonable standards to protect Credit Union Files from unauthorized access in compliance with applicable governmental regulations.

(c) Upon Credit Union providing access to Credit Union Files through Credit Union's customers' personal computers or voice response system, Credit Union agrees to indemnify and hold harmless IntegraSys, its officers, directors, employees, and affiliates against any claims or actions arising out of such access to Credit Union Files or any IntegraSys files (including the files of other IntegraSys Credit Unions) or the IntegraSys System or other IntegraSys systems.

7. **Processing Priority.** IntegraSys does not subscribe to any processing priority; all users receive equal processing consideration.

8. **Forms and Supplies.** Credit Union assumes and will pay the charges for all forms, supplies, and delivery charges. Custom forms ordered through IntegraSys will be subject to the applicable IntegraSys administrative fee as set forth in **Exhibit A – 2**.

9. **Regulatory Supervision.** By entering into this Agreement, IntegraSys agrees that regulatory agencies having authority over Credit Union's operations shall have the authority and responsibility provided to the regulatory agencies pursuant to applicable law relating to services performed by contract or otherwise.

---

Credit Union Initials _BD_ Date _1 22 07_          IntegraSys Initials _____ Date _3/7/07_

### Account Processing Services

IntegraSys will provide Credit Union with the following Account Processing Services:

Base Services:

**Charlotte System Processing Schedule:**
Monday through Friday, 7:30 a.m. to 7:30 p.m. Eastern Time. Saturday 7:30 a.m. to 1:30 p.m. Eastern Time. Charlotte is not available on the following holidays: New Year's Day, Thanksgiving Day, Memorial Day, Christmas Eve (after 1PM Eastern Time), Independence Day, Christmas Day, and Labor Day.

**Share Features:**

| | |
|---|---|
| Types: | Regular; Club; Investment; Savings; Family |
| Fees: | Excess Withdrawal Fee; Manual Fee Posting Transactions |
| Holds: | Check Hold; Fixed Dollar Pledge; Administrative Hold; Legal Hold; Dormancy Hold; Delinquent Hold; Automatic Pledge Calculation |
| Transfers: | Share to Share; Share to Loan; Open-End Loan to Share Draft Account; Share to Fee Payment |

**Certificate Features:**

| | |
|---|---|
| Types: | Renewable; Non-Renewable; Money Markets |
| Purchase Methods: | Cash/Check; Transfer from Shares or other Investments (if allowed); Add Ons |
| Surrender/Maturity /Renewal: | Cash/Check; Transfer to Shares; Partial Withdrawal; Penalty Assessment On-Line |
| Dividend Payments: | Automatic Calculation to Investments Accounts (Compounding) On-Line; Automatic Calculation to Check On-Line; Automatic Calculation to Any Share Account On-Line; Off-Line Posting to Investment Accounts; Off-Line Posting/Withdrawal; Off-Line Posting/Transfer to Specified Share Account |

**Loan Features:**

| | |
|---|---|
| Pledging: | Whole Dollar Pledge; Percentage of Loan Balance; Loan Payment Amount |
| Payment Methods: | Payroll; Automatic Transfer; Over-the-Counter; Cash/Check; Share-to-Loan Transfer |
| Payment Types: | Level-Includes Interest, Late Charges and Principal-Computer Calculated; Fixed Principal Payment; Interest Only-Calculated by Teller or Computer |
| Interest Rates: | Variable-May Change at Any Frequency Off-Line in Mass or Individually; Assigned by Individual Loan-Cross-Referenced to Plan Type; 365 Day Basis |
| Loan Advances: | Term Extension; Recalculation of Payment |

**Dividend Features:**

| | |
|---|---|
| Calculation Methods: | Date-of-Deposit/Date-of-Withdrawal or Average Daily Balance (DOD/DOW/ADB); Minimum Balance Split Rate (DOD/DOW or ADB); Plateau Split Rate (DOD/DOW or ADB) |
| Compounding: | Monthly; Quarterly; Semi-Annually; Annually |

**Payroll Features:**

| | |
|---|---|
| Types: | Exception; PC to PC; Magnetic Tape; Standard Account Format |
| Features: | Multiple Deduction Maintenance; Distribution to Share, Loan, Certificates, or Family Member; Payroll Statement Description for Third Parties |

**Other Features:**

Automatic Voucher/Check Writing

Available Funds Inquiry
Credit Union Defined Security
Message Sending Capability
On-Line/Off-Line Capability
Teller Sales Support
Test Credit Union for On-Line Training

**Standard Reports & Documents:**

Daily:

Daily Activity Journal
Teller Totals
Ledger Totals
Daily Summary
Credit Union Recap
Credit Union File Totals
Master File Maintenance
Payroll File Maintenance
Check Register
Name and Address (N/A) File Maintenance
On-Line Printing of Checks/Receipts
Certificate Policy Table Maintenance

Weekly:

Short Trial Balance
Updated N/A Index Cards

Monthly:

Long Trial Balance
Delinquency Report
New Loans Report
New Loans Analysis
  By Purpose
  By Collateral
Paid-Off Loans Report
New Members Report
Closed Accounts Report
Dormant Accounts Report
Share Analysis by Dollar Value
Loan Analysis
  By Dollar Value
  By Purpose
  By Collateral
  By Interest Rate
Share Certificate Register
Insurance Report

Quarterly:

Quarterly Statements
Dividend Distribution and Interest
Rebate Report

Annually:

Auditor Confirmations
1099 Tape to IRS
Long Trial Balance Report and Delinquency Report
  (Supervisory/Audit Purposes)

As Posted:

Payroll Deduction Journal
Payroll Exception Report
Payroll Daily Summary

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 24 of 60   PageID #: 32

Payroll Recap
Conversion:
      Account Proof List
      N/A Error Report
      Missing Record Report
      Bridge History List
      Payroll Proof List
      N/A Index Cards

**Optional Services:**

The boxes marked below with an "X" indicate the Optional Services selected by the Credit Union as of the Effective Date ("Selected Services"). If, subsequent to the Effective Date, Credit Union desires to add an Optional Service to the Selected Services, Credit Union will provide written notification of such to IntegraSys in accordance with Section 13(f) of the Agreement and Credit Union will purchase the new service at IntegraSys' then current standard charges, unless specified otherwise in Exhibit A-2. Notwithstanding Section 13(b) of the Agreement, upon receipt of Credit Union's notification and IntegraSys' provision of such service to Credit Union, IntegraSys and Credit Union agree that such service will then be deemed a Selected Service and be subject to the terms of this Agreement. In the event anything contained in said written notification is in conflict with any of the provisions of the Agreement or this Exhibit, the terms and provisions of the Agreement shall control.

☒ Alpha Account Processing:
      ☒ IRA Accounting
      ☐ Automatic Certificate Renewal and Notices
      ☐ Maturity Notices
☒ Automatic Teller Machine Processing:
      ☒ ATM Cardholder
      ☐ ATM Processing (Batch/Online)
      ☐ ATM/Audio Service Charges
      ☒ ATM Transactions
☒ Dividend Processing:
      ☒ Automatic Dividend Withdrawal/Transfer
      ☒ Monthly Dividend Posting
☒ General Ledger Services:
      ☐ Batch General Ledger
      ☒ Integrated General Ledger
      ☐ Budget or Comparative Data
      ☐ Daily General Ledger Reports
      ☐ General Ledger Financial Reports
      ☒ On-Line General Ledger History
☐ Hardware Recovery
      IntegraSys offers support for the temporary rental and installation at one location of equipment and software IntegraSys deems necessary to access the IntegraSys Services within 24 hours in the event of a disaster. Telephone support, configuration professional services and new Documentation are also provided. The Hardware Recovery support service also includes 5-day usage of rental equipment. Additional rental days will be provided at IntegraSys' then standard rates.
☐ Insurance Processing:
      ☐ Insurance Withdrawals
      ☐ CDI Insurance Processing
      ☐ Move Master File Fields from Prime Accounts to Sub-Accounts
☐ Loan Origination Processing
      ☐ Loan Advantage
      ☐ Credit Bureau Report Retrieval
      ☐ Instant Pre-Approval
      ☐ Risk Based Pricing
      ☐ Secure Public Viewer
☐ Mass Withdrawal Processing:

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 25 of 60   PageID #: 33

- [ ] Christmas / Club Withdrawals
- [ ] Fixed Payment Mass Withdrawal
- [ ] Interest Rebate Checks
- [x] Miscellaneous Processing:
  - [x] ACH Processing
  - [ ] ACH Returns
  - [x] Aires Software Support
  - [x] Audio Response Subsystem
  - [x] Automated Loan Collections Subsystem
  - [ ] Bank Reconciliation Tape
  - [ ] Check Hold System
  - [x] Credit Bureau Reporting
  - [ ] Credit Card Interface
  - [ ] CRI Automated Lending System Interface
  - [ ] CUNA Automated Lending for Windows System Interface
  - [x] Data Match (quarterly)
  - [ ] Debit Card Processing
  - [x] Dormancy Fees
  - [x] EFT NSF & Overdraft Transfer Fees & Notices Subsystem
  - [x] EXEC (Executive Decision Support) Subsystem
  - [ ] FinCen Support
  - [ ] Firewall Support
  - [ ] Health Savings Accounts
  - [ ] Internet Back-up Solution
  - [ ] Loan Extract Tape
  - [ ] Merger Processing
  - [x] Miscellaneous Uncollected Debt Subsystem
  - [ ] Monthend Account Fee Processing
  - [ ] OFAC Support
  - [x] POS Processing
  - [ ] Shared Audio Response Subsystem
- [ ] Name and Address File Processing:
  - [ ] Name and Address Labels
  - [ ] Name and Address Lists
  - [ ] Wheeldex Cards
  - [ ] Zip Code Analysis Report
- [x] On-Line History:
  - [ ] 3 Months (Nondraft account) and 1 Month (Share draft account)
  - [ ] 3 Months (Nondraft account) and 2 Months (Share draft account)
  - [ ] 3 Months (Nondraft account) and 3 Months (Share draft account)
  - [ ] 6 Months (Nondraft account) and 1 Month (Share draft account)
  - [ ] 6 Months (Nondraft account) and 2 Months (Share draft account)
  - [ ] 6 Months (Nondraft account) and 3 Months (Share draft account)
  - [x] 12 Months (Nondraft account) and 12 Months (Share draft account)
- [ ] Payroll Processing:
  - [ ] ACH Format
  - [ ] Direct Payroll Tape
  - [ ] Standard
  - [ ] Social Security Format
  - [ ] Non-Standard (Approved)
  - [ ] Computer to Computer (RJE)
- [x] Share Draft Processing:
  - [x] Share Draft System
  - [ ] Share Draft Service Charges
  - [x] NSF and Paid Overdraft Notices
  - [x] Automatic Share Draft Returns

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 26 of 60   PageID #: 34

☐ FEDLINE Truncation Service
☐ Shared Service Center Processing
☒ Statement Processing:
    ☒ Statement Sorting (monthly/quarterly)
    ☐ Monthly/Quarterly Statements
    ☐ Optical Character Reader (OCR Coding)
    ☐ Share Draft Trace Number on Statement
    ☒ Share Draft Sequencing on Statement
    ☒ Statement Mailing Service (monthly/quarterly)
    ☒ Credit Union Logo on Statement
☐ Optional Reports and Notices
    Daily:
      ☐ Teller Productivity Report
    Weekly:
      ☒ Delinquency System
      ☐ Paid Loan Notices
    Monthly:
      ☐ Accrued Dividend Report
      ☐ Closed Account Notices
      ☐ Teller Productivity Report
      ☐ Check Register
      ☐ Certificate Renewal Notices
    Annual:
      ☐ Auditor Confirmation Notices
      ☐ 1099 Detail Report
    Special Reports:
      ☐ Additional Copy of Long Trial Balance
      ☒ Cost Analysis (Monthly)
      ☐ General Ledger Annual Listing
      ☐ General Ledger Financial Reports
      ☐ General Ledger Quarterly Activities Report
      ☐ IRA Transaction Register (Quarterly)
      ☐ IRA Annual Transaction Register
      ☐ Name and Address Lists
      ☐ Reference/Location Code
      ☐ Share/Loan Analysis
      ☐ Uncollected Interest Journal
      ☐ Utility Long Trial Balance
      ☐ Zip Code Analysis Report
☒ CD-ROM

## Account Processing Services Fees

IntegraSys will provide Credit Union the following Account Processing Services at the fees and prices indicated:

**IntegraSys Administrative Fee:**   0%

**Basic Services:**
The monthly on-line use charge payable by Credit Union to IntegraSys is $.70 per member per month.

For the purpose of calculating the monthly on-line use charge, a "Member Account" is defined as a total of up to 4 share sub-accounts, 10 loan sub-accounts and 17 certificate sub-accounts, to be used as specified by IntegraSys.

Workstation telecommunication and Audio Response communication fees are included in the monthly on-line use charge. Any additional telecommunication services requested by Credit Union and provided by IntegraSys will be at IntegraSys' standard rates in effect at the time the services are requested.

**Optional Services:**
Credit Union has requested that IntegraSys provide it with the Selected Services indicated on **Exhibit A-1**. Such Selected Services will be charged at IntegraSys' then standard rates, unless specified otherwise herein. IntegraSys agrees the charges for the Selected Services listed below will be as indicated:

| | |
|---|---|
| Alpha Account Processing: | |
| IRA Accounting | $44.50 per month |
| Automatic Teller Machine Processing: | |
| ATM Cardholder | $.10 each |
| ATM Transactions | $.08 each |
| Dividend Processing: | |
| Automatic Dividend Withdrawal/Transfer | $22.50 per month |
| Monthly Dividend Posting | $44.50 per month |
| General Ledger Services: | |
| Integrated General Ledger | $0.00 |
| On-Line General Ledger History | $0.00 |
| Miscellaneous Processing: | |
| ACH Processing | $.15 each |
| Aires Software Support | $15.00 per month |
| Audio Response Subsystem | $0.00 |
| Automated Loan Collections Subsystem | $0.00 |
| Credit Bureau Reporting (per bureau) | $0.00 |
| Data Match (quarterly) | $150.00 per quarter |
| Dormancy Fees (base) | $27.50 per month |
| Transaction Fees | $0.05 each |
| EFT NSF & Overdraft Transfer Fees & Notices Subsystem | $175.00 per month |
| EXEC (Executive Decision Support) Subsystem | $0.00 |
| Miscellaneous Uncollected Debt Subsystem | $0.00 |
| POS Processing: | |
| Tier 1: 0-2,500 | $0.24 each |
| Tier 2: 2,501+ | $0.10 each |
| Monthly Minimum | $11.00 per month |
| On-Line History: | |
| 12 Months (Nondraft account) and 12 Months (Share draft account) | $0.00 |
| Share Draft Processing: | |
| Share Draft System | $0.00 |
| NSF and Paid Overdraft Notices | $0.00 |
| Automatic Share Draft Returns | $0.77 each |
| Statement Processing: | |

| | |
|---|---|
| Statement Sorting (monthly/quarterly) | $0.00 |
| Monthly/Quarterly Statements | $0.0171 per page |
|    Monthly Minimum | $1.50 per month |
|    Envelopes | $0.035 each |
|    Per Insert | $0.005 each |
| Statement Mailing Service | $0.085 per statement |
|    Monthly minimum | $100.00 per month |
|    Quarterly minimum | $100.00 per quarter |
| Share Draft Sequencing on Statement | $0.042 each |
| Credit Union Logo on Statement | $0.00 |
| Optional Reports and Notices | |
|    Weekly: | |
|       Delinquency System (Notices) | $0.00 |
|       Delinquency System (Reports) | $0.00 |
|       Delinquency System (Notice Mailing) | $5.00 per week |
|    Special Reports: | |
|       Cost Analysis (Monthly) | $0.00 |
|    CD-ROM | $75.00 per month |

## Conversion Services:

**Data File Conversion Services relating to Mergers or Acquisitions:**

Credit Union will be responsible for all travel-related expenses related to installation, support, and training concerning any data file Conversion Services relating to mergers or acquisitions. The data file conversion charge payable by Credit Union to IntegraSys shall be provided to Credit Union at IntegraSys' then standard rates.

Credit Union will be charged at the then standard hourly rate, or minimums, for any application development, project management, and consulting relating to the merger or acquisition of any employment group or financial institution to the existing Credit Union number of members or accounts.

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 29 of 60   PageID #: 37

## Professional Services

Credit Union agrees with IntegraSys as follows:

1. <u>Professional Services</u>. IntegraSys will provide Credit Union with professional services, modifications and other professional service deliverables related to Services ("Professional Services") for particular projects as described in <u>Exhibit B-n</u> (each a "Work Order").

All Professional Services for Work Orders shall be performed in accordance with the procedures set forth below. Any dates for performance are dependent upon the timely performance by each party of the tasks assigned under the project plans for such Work Orders.

(a) <u>Business Requirements List</u>. Credit Union shall provide IntegraSys with all necessary information concerning its requirements for Professional Services in a Business Requirements List. IntegraSys shall review and suggest revisions to such Business Requirements List on a timely basis. The parties shall mutually agree in writing on the final Business Requirements List for any such project.

(b) <u>Work Order</u>. All Professional Services rendered for a Work Order shall be based on a mutually agreed scope definition as provided below:

(i) IntegraSys shall develop a Work Order and associated scope definition based on the Business Requirements List for Credit Union's written approval. IntegraSys shall not be obligated to perform any Professional Services until the Work Order is approved in writing by Credit Union, which approval shall not be unreasonably withheld or unduly delayed.

(ii) Each Work Order shall contain a listing of the nature and timing of tasks, some of which are to be performed by IntegraSys and some by Credit Union. Modifications and changes to the Project Plan shall be only by mutual written agreement of the parties. Modifications or additions to the agreed upon Work Order shall be added only upon mutual written agreement. In the event the parties agree to any such changes, the applicable Work Order shall automatically be modified to the extent necessary to allow for such changes.

(c) <u>Project Plan</u>. IntegraSys shall develop a Project Plan for each Work Order based on

functional specifications. Each such Work Order shall contain a listing of the nature and timing of tasks for the project (including the development of an acceptance test), some of which are to be performed by IntegraSys and some by Credit Union. IntegraSys shall utilize its commercially reasonable efforts to meet the dates set forth in the Work Order or any replacement thereof. Modifications and changes to the Work Order shall be only by mutual written agreement of the parties.

(d) <u>Acceptance Test</u>. IntegraSys shall prepare an "Acceptance Test" for the testing of each Work Order. Credit Union shall timely review the proposed Acceptance Test. The Acceptance Test shall be adopted once Credit Union's written approval is given, which approval shall not be unreasonably withheld or delayed.

(e) <u>Acceptance Testing</u>. In the case of development or implementation projects, each project shall be deemed successfully completed by IntegraSys upon the completion of the Acceptance Test or by live operation and use of the Development Project in Credit Union's business for a period of 10 days, whichever occurs first. Credit Union agrees promptly to notify IntegraSys in writing (and with reasonable particularity) upon conclusion of testing or earlier upon discovery of any specification non-conformities disclosed by such testing. IntegraSys shall correct any specification non-conformities disclosed by such testing within a reasonable time of Credit Union's notice.

2. <u>Fees</u>. (a) Credit Union shall pay IntegraSys fees and other charges as specified in each Work Order ("Professional Services Fees"). The rates quoted therein will be valid for 60 days from the effective date of a Work Order. Thereafter, they will be subject to IntegraSys' then standard rates.

(b) Credit Union agrees to pay the reasonable travel and living expenses of any IntegraSys employees and IntegraSys authorized contractors who render services at any Credit Union site in connection with each Work Order. All expenses shall be itemized on invoices submitted by IntegraSys.

3. <u>Use of and Rights to Work Product</u>. All information, reports, studies, object or source code,

flow charts, diagrams, and other tangible or intangible material of any nature whatsoever produced by or as a result of any Work Order shall be the sole and exclusive property of IntegraSys or its corporate parent. Credit Union shall be entitled to use the results of any Work Order in accordance with the terms and conditions of the Agreement.

4. Work Order Termination. At Credit Union's sole option, Credit Union may terminate any Work Order upon 1 month's prior written notice to IntegraSys, provided that Credit Union agrees to pay IntegraSys for any outstanding Professional Services

Fees for Professional Services rendered prior to the effective date of termination.

5. Rescheduling. If Credit Union is unable to provide access to required facilities or personnel or is unable to meet its tasks assigned on a Work Order in a timely manner, IntegraSys will endeavor to reschedule tasks to minimize non-productive time. All such non-productive time is chargeable to Credit Union. If such non-productive time is expected to be significant, IntegraSys will endeavor to reassign its personnel to other suitable work. In this event, Credit Union will not be charged for the time personnel were reassigned.

Credit Union Initials _BD_ Date _1/22/07_ IntegraSys Initials _____ Date _3/7/07_

## Work Order

Listed below are those Work Orders in place as of the Effective Date. Subsequent to the Effective Date, any separately prepared and mutually agreed Work Order will be deemed to be incorporated in this **Exhibit B-1** and be subject to the terms of this Agreement. In the event anything contained in said Work Order is in conflict with any of the provisions of the Agreement or this Exhibit, the terms and provisions of the Agreement shall control.

| Description | Tasks | Party Responsible | Rate |
|---|---|---|---|
| No Work Orders as of the Effective Date | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Exhibit C

## Material Purchased Through IntegraSys

Credit Union agrees to purchase, and IntegraSys agrees to sell, hardware and software licenses on the terms and subject to the conditions set forth below:

1. Equipment. Hardware and software licenses being purchased through IntegraSys are described in each **Exhibit C-1** ("Material"). Credit Union understands that IntegraSys is acting as an independent sales organization representing each manufacturer or supplier (each, a "Supplier") identified in each **Exhibit C-n**.

2. Payment. Credit Union shall pay Credit Union 50% of the total price for Material specified in each **Exhibit C-1** upon execution of such Exhibit and 50% upon delivery of Material to the site or sites designated by Credit Union on each **Exhibit C-1** (collectively, "Installation Site"). Credit Union shall be responsible for all freight charges associated with shipment of Material from Supplier or IntegraSys, as the case may be, to the Installation Site. In the event of any price increase by a Supplier, IntegraSys shall accordingly increase the prices for Material.

3. IntegraSys Obligations. Credit Union also understands and agrees that the ability of IntegraSys to obtain Material may be subject to availability and delays due to causes beyond IntegraSys' control. IntegraSys shall promptly place any orders submitted under this Exhibit with each Supplier and shall, at Credit Union's direction, request expedited delivery whenever available.

4. Insurance. Credit Union shall be responsible for appropriate property insurance for all equipment, whether Credit Union-owned or IntegraSys-owned, within Credit Union's premises.

5. Delivery and Installation. (a) Delivery. On Credit Union's behalf, IntegraSys shall arrange for delivery of Material to the Installation Site on or about the date requested by Credit Union ("Delivery Date"). In the absence of shipping instructions, IntegraSys shall select a common carrier on Credit Union's behalf.

(b) Installation. IntegraSys shall arrange for the installation of the items of Material in consideration of the Installation Fees listed on each **Exhibit C-1**. Credit Union shall not perform any installation activities without IntegraSys' written consent. IntegraSys or its designee shall have full and free access to Material and the Installation Site until installation is completed. If a suitable installation environment is not provided by Credit Union, then IntegraSys shall be required to perform only as many normal installation procedures as it deems to be practicable within the available facilities. Installation of Material will take place during normal IntegraSys business hours, Monday through Friday, exclusive of IntegraSys holidays, unless otherwise agreed by IntegraSys.

(c) Installation Environment. Credit Union shall provide a suitable installation environment for Material as specified by IntegraSys or its agents and any and all other specifications provided to Credit Union by Supplier or IntegraSys. Unless IntegraSys agrees to so provide, Credit Union shall also be responsible for (i) furnishing all labor required for unpacking and placing Material in the desired location for installation; and (ii) physical planning including, but not limited to, floor planning, cable requirements, and safety requirements in accordance with the installation manual and any and all applicable building, electrical, or other codes, regulations, and requirements. All such physical planning shall be completed on or before the Delivery Date.

6. Shipment and Risk of Loss. All prices shown on each **Exhibit C-1** are F.O.B. Supplier's plant. All transportation, rigging, drayage, insurance, and other costs of delivery of Material to the Installation Site shall be paid by Credit Union. Risk of loss shall pass to Credit Union upon shipment.

7. Title to Equipment. Title to all hardware items comprising Material shall remain with Supplier or IntegraSys, as the case may be, until all payments therefor are made by Credit Union and, until such time, Credit Union agrees that it shall not sell, transfer, pledge, or otherwise dispose of such items without IntegraSys' prior written consent.

8. Security Interest. Credit Union grants IntegraSys a security interest in each component part of Equipment and the proceeds thereof until the purchase price due IntegraSys is paid in full. Credit Union shall execute any instruments or documents IntegraSys deems appropriate to protect the security interest and, in any event, this Exhibit shall constitute a financing agreement within the meaning of Article 9 of the Uniform Commercial Code and a copy of this Exhibit may be filed at any time after signature by IntegraSys as a financing statement for that purpose.

In the event of default in payment or other breach by Credit Union, IntegraSys shall have all rights and remedies of a secured creditor upon default as provided by applicable law. IntegraSys shall, at its sole expense, file releases for any financing statements recorded pursuant to this Exhibit promptly upon receipt of final payment.

9. Acceptance. Equipment shall be deemed to have been accepted when it has passed either IntegraSys' or Supplier's standard post-installation test procedures at the Installation Site.

10. Substitutions. Prior to delivery, IntegraSys reserves the right, at no additional charge to Credit Union, to make substitutions and modifications in the design of hardware and/or the associated documentation provided hereunder; provided that such substitutions or modifications do not materially and adversely affect performance or function.

11. Warranties. IntegraSys warrants that Credit Union will acquire good and clear title to all hardware items comprising Material free and clear of all liens and encumbrances. IntegraSys hereby assigns to Credit Union all warranties Supplier has granted to IntegraSys with respect to Material as set forth on each Exhibit C-n. Credit Union hereby agrees to all of the terms and conditions applicable to those warranties and acknowledges that:

(i) neither Supplier nor IntegraSys warrants that use of Material will be uninterrupted or error free; and

(ii) Supplier's warranties, and the assignment of such warranties by IntegraSys to Credit Union, shall not impose any liability on IntegraSys due to the services or assistance provided to Credit Union by IntegraSys with respect thereto.

11. Liability. Notwithstanding the limitation of liability provisions set forth in the Agreement, IntegraSys' aggregate liability for a default relating to Material shall be limited to the amount paid by Credit Union for the applicable Material.

Credit Union Initials _BD_ Date _1/22/07_ IntegraSys Initials _____ Date _3/7/07_

Exhibit C – 1

## Material, Supplier, and Prices

As of the Effective Date, Credit Union agrees to purchase, and IntegraSys agrees to sell, those Materials listed below. Subsequent to the Effective Date, any separately prepared and mutually agreed quotation for Materials will be deemed to be incorporated in this **Exhibit C-1** and be subject to the terms of this Agreement. In the event anything contained in said quotation is in conflict with any of the provisions of the Agreement or this Exhibit, the terms and provisions of the Agreement shall control.

| Material | Manufacturer and/or Supplier | Price |
|---|---|---|
| No Material as of the Effective Date | | |

## Installation Sites and Fees

## Software Products

### 1. Definition of Terms

1.1 'Basic Maintenance Services' means maintenance services described in Section 4 below. Maintenance Services are available only with respect to the current and last prior release of Software.

1.2 'Computer System' means the manufacturer-supplied equipment and software identified on each **Exhibit E-n.**

1.3 'Documentation' means the Software documentation specified on each **Exhibit E-n.**

1.4 'Enhancements' means modifications made to Software that add program features or functions not originally within the Software and that are provided upon payment of additional License Fees. IntegraSys reserves the right to determine which changes are upgrades or separately priced enhancements.

1.5 'Location' means only the premises identified on each **Exhibit E-n.**

1.6 'Maintenance Fee' means the monthly or annual fee specified in each **Exhibit E-n** for Maintenance Services.

1.7 'Non-conformity' means a failure of Software to perform in substantial accordance with functions described in the Documentation.

1.8 'Operational Support' means optional IntegraSys services available, at Credit Union request, to support Credit Union's Software operation. Operational Support shall only be available if Credit Union is receiving Maintenance Services.

1.9 'Software' means the standard, unmodified computer programs in object code, unless otherwise specified on each **Exhibit E-n,** together with one set of IntegraSys standard documentation. Software does not include separate, independent, and stand-alone modules

or subsystems that Credit Union has developed and maintained without IntegraSys' assistance.

1.10 'Software System' means the Software and Third Party Software.

1.11 'Special Maintenance Services' means any other maintenance services as specified in **Exhibit E-n.**

1.12 'Third Party' means any party other than IntegraSys, Credit Union, and their respective employees, agents, and subcontractors.

1.13 'Third Party Software' means software provided by IntegraSys that is owned or licensed by Third Parties, where applicable, as identified on **Exhibit E-n.**

1.14 'Total License Fee' means the total sum specified in each **Exhibit E-n** for Software. Any fees for modifications, enhancements, upgrades, or additions to Software are excluded from this Exhibit unless otherwise specified.

1.15 'Upgrades' means changes made to maintain compatibility with new system software releases or to improve previously existing features and operations within Software. This primarily includes Software program fixes.

1.16 'Use' means copying or loading any portion of Software from storage units or media into any equipment for the processing of data by Software, or the operation of any procedure or machine instruction utilizing any portion of either the computer program or instructional material supplied with Software at the Location. Use is limited to type of operations described in the Documentation solely to process Credit Union's own work. Use specifically excludes any service bureau or time-share services to Third Parties without prior written consent by IntegraSys and payment by Credit Union of additional fees in accordance with mutually agreed terms.

## 2. License

2.1 IntegraSys agrees to furnish Software to Credit Union and does hereby grant to Credit Union a personal, non-exclusive, nontransferable License to Use the Software at the Location on the designated Computer System (i) to process the designated number of accounts; or (ii) by the maximum number of users; as specified in each **Exhibit E – n**.

2.2 Credit Union may change the Location in the event Credit Union transfers its data processing to a new location within the same country. Credit Union will provide IntegraSys with 60 days advance notice of any proposed transfer of operations. Assistance by IntegraSys related to the transfer shall be chargeable at IntegraSys' then current professional service rates. Credit Union shall reimburse IntegraSys for any out-of-pocket expenses.

2.3 IntegraSys prohibits the copying of any portions of the Software System except that Credit Union may copy reasonable quantities of any standard end user documentation; and may copy machine language code, in whole or in part, in reasonable quantities, in printed or electronic form, for use by Credit Union at the Location for archive, back-up, or emergency restart purposes, or to replace copy made on defective media. The original, and any copies of Software, or any part thereof, shall be IntegraSys' property.

2.4. Credit Union shall maintain any such copies and the original at the Location and one Credit Union archive site in the same country. Credit Union may transport or transmit a copy of Software from the Location or the Archive Site to another location in the same country as the Location for back-up use when required by Computer System malfunction, provided that the copy or original is destroyed or returned to the Location or Archive Site when the malfunction is corrected. Credit Union shall reproduce and include IntegraSys' copyright and other proprietary notices on all Software System copies made, in whole or in part, in any form.

2.5 Credit Union shall not decompile, disassemble, or otherwise reverse engineer the Software System.

2.6 Third Party Software is provided to Credit Union under the following supplemental terms:

(a) Use of Third Party Software shall be restricted to use as part of the Software System.

(b) IntegraSys and Third Party Software owners shall not be liable for any damages, whether direct, indirect, incidental, or consequential arising from the use of Third Party Software.

(c) Third Party Software owners are hereby designated as third party beneficiaries of this Exhibit as it relates to their software.

2.7 Credit Union shall obtain and maintain at its own expense such data processing and communications equipment and supplies as may be necessary or appropriate to facilitate the proper use of the Software System.

## 3. Professional Services Terms

3.1 IntegraSys agrees to provide Credit Union with access to IntegraSys' professional personnel at the rates identified on **Exhibit E-n** and in accordance with the terms and conditions set forth in **Exhibit B**.

3.2 Operational Support. If requested by Credit Union and if applicable, and subject to a mutually agreed upon implementation, IntegraSys agrees to provide Operational Support at the rates specified in **Exhibit E-n**.

## 4. Maintenance Services Terms

4.1 IntegraSys will provide the following Basic Maintenance Services to Credit Union:

(a) Up to 10 hours per month for telephone support during normal business hours for reasonable operator support. For telephone support over 10 hours or not during normal business hours, Credit Union will be charged IntegraSys' then standard professional service rates.

(b) On-site support, when requested by Credit Union, will be provided at IntegraSys' then standard professional service rates.

(c) Software program fixes to correct Software Non-conformities for the current release will be provided within a reasonable period of time upon notice by Credit Union. Credit Union agrees to provide IntegraSys with reasonable assistance and information in connection therewith.

(d) Software Upgrades will be provided to Credit Union.

(e) Training for updates may be offered to Credit Union at IntegraSys' standard professional service rates. If such training is conducted at the Location or other Credit Union site, Credit Union agrees to reimburse IntegraSys for its reasonable travel and out-of-pocket expenses.

4.2 Special Maintenance Services, if selected by Credit Union, shall be designated on **Exhibit E-n.**

4.3 Maintenance Fees shall be subject to increase following delivery of new release(s) of, or modifications or additions to the Software or changes in the numbers of accounts processed or user seats.

4.4 IntegraSys may utilize remote diagnostic software and dial-up telephone lines in providing these services. Credit Union shall cooperate and assist IntegraSys to expedite resolution of all Non-conformities.

4.5 Should IntegraSys' review of the Non-conformity indicate, in IntegraSys' reasonable opinion, that the reported problem is not a Software defect but is due to other problems including, but not limited to, input not in accordance with specifications, Credit Union's abuse or misuse of the Software System, or by a modification or addition to the Software System not performed by IntegraSys, or by Credit Union's failure to properly maintain the Computer System or to install the required

system software release as instructed by IntegraSys, then:

(a) Credit Union agrees to reimburse IntegraSys for the related costs of work performed by IntegraSys in investigating the problem at IntegraSys' then standard professional service rates, and

(b) IntegraSys, at Credit Union's request, shall advise Credit Union whether IntegraSys can correct or assist in resolving such problem, and the terms under which IntegraSys shall undertake the same. Upon written acceptance by Credit Union, IntegraSys shall correct or assist in resolving the problem in accordance with such terms.

4.6 Network-related problems are not covered under Basic Maintenance Services. In the event IntegraSys does provide such service, Credit Union agrees to pay IntegraSys' then standard professional service rates.

5. **Equipment Terms**

5.1 Credit Union agrees to purchase, and IntegraSys agrees to sell, the Computer System described in **Exhibit E-n** in accordance with the terms specified in **Exhibit C**. IntegraSys shall arrange for installation of the Computer System in consideration of the Installation Fees listed on **Exhibit E-n.**

5.2 Unless the parties agree otherwise, IntegraSys shall not be responsible for the provision of any maintenance or repairs to the Computer System or of any parts or replacements for the Computer System.

5.3 Notwithstanding the limitation of liability provisions set forth in the Agreement, IntegraSys' aggregate liability for a default relating to any third party equipment or Third Party Software shall be limited to the amount paid by Credit Union for the applicable equipment or software.

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 38 of 60   PageID #: 46

## 6. Performance

6.1 Credit Union shall give IntegraSys full access to the Location, Software, and Computer System to enable IntegraSys to provide Services and shall make available information, facilities, personnel, and services reasonably required by IntegraSys for the performance of its obligations hereunder.

6.2 The Software shall be deemed accepted when it passes IntegraSys' standard post-installation test procedures at the installation site.

6.3 Work in determining the nature of any problem or in making Software corrections, amendments, or additions may be carried out at IntegraSys' site or the Location, at IntegraSys' discretion.

6.4 Credit Union agrees to maintain the Computer System, Software, and Third Party Software in accordance with IntegraSys' then current specified minimum configuration during the term hereof, or contract with IntegraSys to so provide.

6.5 Credit Union shall be responsible for ensuring that its systems are Year 2000 compliant and capable of passing and/or accepting date formats from and/or to the Software.

6.6 Credit Union agrees to train current and future employed staff members on the technical and user operations of the Software.

## 7. Warranties

7.1 IntegraSys warrants that the Software will perform in accordance with its functional specifications when operated in the specified operating environment as described in the Documentation. For a period of 90 days after delivery, IntegraSys will provide replacements or corrections to any portion of the Software that does not so perform where such failure is material, provided IntegraSys is notified in writing. This warranty shall not apply if the problem is caused by unauthorized modification to the Software System, use of the Software in combination with non-IntegraSys provided software, or by incorrect Use. Credit Union acknowledges that the warranties given by IntegraSys are conditional upon the procurement and maintenance by Credit Union of the Computer System in accordance with the then current specified configuration.

7.2 IntegraSys' obligation under the warranty stated in the foregoing paragraph shall be to repair or replace defective or non-conforming portions of the Software at its own expense and within a reasonable time.

7.3 IntegraSys warrants that it has the right to license the Use of the Software.

7.4 IntegraSys warrants that the Software is Year 2000 compliant.

## 8. Indemnity

8.1 IntegraSys shall indemnify Credit Union and hold it harmless against any claim or action alleging Use of Software infringes a patent, copyright, or other proprietary right of a Third Party enforceable in the Location. Credit Union agrees to notify IntegraSys promptly in writing of any such claim and grants IntegraSys sole right to control the defense and disposition of such claim.

8.2 If, as a result of such claim, IntegraSys or Credit Union is permanently enjoined from using Software by a final, non-appealable decree, IntegraSys, at its sole option and expense, may (i) procure for Credit Union the right to continue to use Software or (ii) provide a replacement or modification for Software so as to settle such claim. If Software modification is not reasonably practical in IntegraSys' sole opinion, IntegraSys shall discontinue and terminate this License upon written notice to Credit Union and shall refund to Credit Union on a pro rata basis based on a 60 month amortization schedule, the Total License Fees paid to IntegraSys. In making this determination, IntegraSys will give due consideration to all factors, including financial expense.

8.3 The foregoing states IntegraSys' entire liability for the infringement of any copyrights, patents, or other proprietary rights by Software or any

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 39 of 60   PageID #: 47

part thereof, and Credit Union hereby expressly waives any other liabilities on the part of IntegraSys arising therefrom.

8.4 IntegraSys shall have no liability for any claim based upon (a) use of any part of Software in combination with materials or software not provided by IntegraSys; or (b) modifications made by Credit Union or any Third Party.

## 9. Title

9.1 Nothing in this Agreement shall convey to Credit Union any title to or any rights in the Software including but not limited to all proprietary rights or ownership of any modifications. Credit Union's sole right in relation to the Software or any modifications is to Use the same for the duration of this Agreement under the terms and conditions contained herein.

9.2 Software and all Software modifications, enhancements, or upgrades, and all patents, copyrights, or other proprietary rights related thereto are IntegraSys' sole and exclusive property, whether made by IntegraSys, Credit Union, or any of their employees or agents. Credit Union shall execute documents reasonably required by IntegraSys to perfect such rights.

9.3 All information, reports, studies, object or source code, flow charts, diagrams, and other tangible, or intangible material of any nature whatsoever produced by or as a result of any of the services performed hereunder by IntegraSys or jointly with Credit Union, shall be the sole and exclusive property of IntegraSys or its corporate parent. Credit Union shall be entitled to Use all such work product produced by IntegraSys in accordance with the terms and conditions hereof.

## 10. Termination

10.1 The termination of this Agreement shall automatically, and without further action by IntegraSys, terminate and extinguish the License, and all rights in and to the Software System shall automatically revert irrevocably to IntegraSys. IntegraSys shall have the right to take immediate possession of the Software

System and all copies thereof wherever located without further notice or demand.

10.2 If Credit Union violates any of the Non-Assignment, License, or Use provisions of this Exhibit, or confidentiality provisions of the Agreement as relates to Software, and fails to remedy any such breach within 5 days of notice thereof from IntegraSys, IntegraSys may terminate this Exhibit without further notice.

## 11. Non-Assignment

11.1 In the event of the sale of 50% or more of Credit Union's common stock, or the sale of all or substantially all of Credit Union's assets, or in the event of any merger in which Credit Union is not the surviving organization, Credit Union may transfer this Exhibit and upon IntegraSys' prior written consent (which consent shall not be unreasonably withheld) and upon payment of a mutually agreed to additional license fee for such transfer.

11.2 If the organization acquiring Credit Union's common stock, assets, or surviving a merger is an organization deriving more than 5% of its gross revenues from providing service bureau, time share, computer software consulting services, computer software licensing, or computer hardware sales, IntegraSys shall be under no obligation to consent to such transfer.

## 12. Export

12.1 Limits. Credit Union shall not export, or re-export, directly or indirectly, the Software System or any technical data derived therefrom to any country for which the United States Government or any agency thereof may require an export license or other government approval without first acquiring that license or approval.

12.2 Compliance. Credit Union agrees that with respect to compliance with the United States Export regulations, (a) Credit Union will comply with such export regulations regarding the Software System and technical data; (b) Credit Union will permit audits or reviews by IntegraSys covering the Software System and data export activity; (c) Credit Union understands that IntegraSys reserves the right to refuse performance of its obligations

hereunder in cases of noncompliance by Credit Union of such export regulations; and (d) Credit Union will not engage in any transaction of activity with any party, firm, or company notified by the U.S. Department of Commerce Office of Export Administration to be unsuitable or listed on the table of denial orders.

Credit Union Initials __BD__   Date __1|22|07__      IntegraSys Initials _____   Date __3/7/07__

The Software listed below is the Software licensed by the Credit Union as of the Effective Date ("Selected Software"). If, subsequent to the Effective Date, Credit Union desires to add Software to the Selected Software, Credit Union will provide written notification of such to IntegraSys in accordance with Section 13(f) of the Agreement and Credit Union will purchase the new Software at IntegraSys' then current standard charges, unless otherwise specified in Exhibit E-1. Notwithstanding Section 13(b) of the Agreement, upon receipt of Credit Union's notification and IntegraSys' provision of such Software to Credit Union, IntegraSys and Credit Union agree that such Software will be deemed a Selected Software and be subject to the terms and conditions of the Agreement. In the event anything contained in said written notification is in conflict with any of the provisions of the Agreement or this Exhibit, the terms and provisions of the Agreement shall control.

## License:

|  | Sellstation |
|---|---|
| Documentation | Instructions, manuals and other materials designed, developed, owned, modified or provided by IntegraSys as delivered to Credit Union hereunder. |
| Computer System | Credit Union is responsible for providing a Computer System that meets the minimum configuration requirements recommended by IntegraSys or as separately published and updated from time to time. |
| Location(s) | Highway 68 South, Copperhill, TN 37317 (Main); 5004 Appalachian Highway, Blue Ridge, GA 30513 (Branch) |
| Total License Fee | Previously paid |
| License Fee Payment Timetable | 100% due upon delivery of License(s) |
| Maximum Accounts Processed | N/A |
| Standard Interfaces | N/A |
| Archive Site | TBD |
| User Seat (Workstation) Limitations | 12 workstations included; Licenses for additional workstations may be purchased at IntegraSys standard rates. |

## Maintenance Services:

### Basic Maintenance Services

IntegraSys will provide Basic Maintenance Services with respect to the current Software release. Basic Maintenance Services with respect to the last prior Software release will be provided for a period of 90 days after the current release is made available for general distribution.

Notwithstanding the foregoing, IntegraSys will bill Basic Maintenance Services for SellStation as the lesser of either $50.00 per workstation or a maximum of a $1,000.00 per site.

| Modules & Maintenance Fee | Main (7 workstations) Sellstation | $350.00 |
|---|---|---|
|  | Branch (5 workstations) Sellstation | $250.00 |
|  | Total Annual Maintenance Fee | $600.00 |

### Maintenance Fee Payment Timetable
Maintenance fees are payable monthly in advance.

## Third Party Software:

No Third Party Software as of the Effective Date.

If, following the Effective Date, Credit Union desires to add Third Party Software, IntegraSys will resell such Third Party Software to Credit Union in accordance with the terms of this Agreement and upon receipt of Credit Union's signature on a separately prepared quotation. Any such additional Third Party Software is deemed governed by the Third Party provider's standard end user terms and conditions.

**Additional Third Party Software Terms and Conditions:**
- Any increase in fees for any Third Party Software may result in an increase to Credit Union as they are incurred by IntegraSys.
- IntegraSys agrees to pass through to Credit Union the warranties and indemnities IntegraSys has received from Third Party Software owners.
- IntegraSys may, at its sole discretion, invoice Credit Union for the Total License Fee and Total Maintenance Fee for Third Party Software, immediately upon receipt of an invoice from a Third Party.

## Virtual Branch® Services

Credit Union agrees with IntegraSys as follows:

1. __Services__. IntegraSys will provide Credit Union the electronic interactive transaction processing services specified in Exhibit G-n (collectively, the "IntegraSys Virtual Branch Services").

2. __Fees__. Credit Union shall pay IntegraSys the fees and other charges for IntegraSys Virtual Branch Services specified in Exhibit G-n.

3. __Equipment and Supplies__. Credit Union shall obtain and maintain at its own expense such equipment as may be necessary or appropriate to facilitate the proper use and receipt of IntegraSys Virtual Branch Services. Credit Union shall be responsible for paying for all supplies to be used in connection with IntegraSys Virtual Branch Services.

4. __Service Modifications__. In connection with IntegraSys' provision of IntegraSys Virtual Branch Services, either party may terminate IntegraSys Virtual Branch Services, or any part thereof, immediately upon notice to the other party of any legislative, regulatory, or judicial (i) impairment of the provision thereof; and/or (ii) restrictions or conditions that would materially affect the integrity thereof.

5. __Effect of Termination__. Upon any termination or expiration of this Exhibit, Credit Union shall continue to be responsible for fees related to the IntegraSys Virtual Branch Services unless IntegraSys receives written notice to delete Credit Union Files from the IntegraSys System. Credit Union shall continue to be responsible for all data communications and modem fees until (i) all circuits are disconnected and the telecommunications company ceases invoicing IntegraSys; and (ii) IntegraSys receives back all equipment supplied to Credit Union by IntegraSys.

7. __IntegraSys Trademark and Content License__. Credit Union hereby grants to IntegraSys a non-exclusive, non-assignable right to use Credit Union's trademarks, tradenames, service marks, and service names (collectively, "Credit Union Trademarks"), and Credit Union's work, content

or information ("Credit Union Content" in connection with IntegraSys' provision of IntegraSys Virtual Branch Services. Credit Union will indemnify and hold harmless IntegraSys, its officers, directors, employees, designated supplier, and affiliates against any claims or actions arising out of IntegraSys' use of Trademarks and/or Credit Union Content. IntegraSys acknowledges that all of the goodwill associated with the use of the Credit Union Trademarks shall be owned by Credit Union.

8. (a) __Credit Union Trademark and Content License__. IntegraSys hereby grants to Credit Union a non-exclusive, non-assignable right to use the "VIRTUAL BRANCH" mark owned by IntegraSys, (the "IntegraSys Trademark"), and IntegraSys work, content, or information ("IntegraSys Content") in connection with Credit Union's receipt of Virtual Branch Services. IntegraSys will indemnify and hold harmless Credit Union, its officers, directors, employees, designated supplier, and affiliates against any claims or actions arising out of Credit Union's use of the IntegraSys Trademark and/or IntegraSys Content. Credit Union acknowledges that all of the goodwill associated with the use of the IntegraSys Trademark shall be owned by IntegraSys.

(b) Credit Union shall use the IntegraSys Trademark only in the manner and with appropriate legends prescribed at any time by IntegraSys. Credit Union shall not use any other trademark, tradename, service mark, service name or logo in combination with the IntegraSys Trademark without the prior written approval of IntegraSys, except if required by law. Credit Union shall not use any other trademark, trade name, service mark, service name or logo similar to or resembling the IntegraSys Trademark that is likely to cause confusion, deception or mistake.

9. __Regulatory Compliance__. Credit Union shall use the IntegraSys Virtual Branch Services only in conjunction with lawful purposes. Credit Union agrees not to use the IntegraSys Virtual Branch Services for any activities in violation of any laws or regulations, including, but not limited to, wrongful transmission of copyrighted material, sending of threatening or obscene materials, or

misappropriation or exportation of trade or national secrets.

10. <u>Credit Union Warranties</u>. Credit Union represents and warrants that (a) any Credit Union Content provided to IntegraSys is either original or that Credit Union has the legal right to provide such Credit Union Content; and (b) Credit Union Content doesn't impair or violate any intellectual property or other rights of IntegraSys or any third party. Credit Union will indemnify and hold harmless IntegraSys, its officers, directors, employees, designated supplier and affiliates against any claims or actions arising out of any breaches of the foregoing; or any improper use of information gathered through any co-branded site as part of IntegraSys Virtual Branch Services. Credit Union acknowledges that IntegraSys shall not monitor, review or approve any Credit Union Content. Credit Union acknowledges that access to IntegraSys Virtual Branch Services shall be across public and private lines and that IntegraSys has no control over such lines or the information available from non-IntegraSys sources.

11. <u>Customer Support</u>. Credit Union agrees to provide all end user customer support. IntegraSys will provide "second level" Customer Support to Credit Union's user support representatives. "Customer Support" means IntegraSys will take an initial technical support inquiry from Credit Union and initiate the troubleshooting process. IntegraSys shall use commercially reasonable efforts to determine the source of customer support issues, and to remedy the issue. Customer Support is available as described in the Exhibits.

12. <u>Marketing</u>. Credit Union agrees to market, promote and sell the IntegraSys Virtual Branch Services to credit union's customers ("Members") and potential members. In addition, and as may be reasonably requested, Credit Union will assist IntegraSys and its authorized representatives in marketing, promoting and selling the IntegraSys Virtual Branch Services to its Members and potential members.

Credit Union Initials __BD__  Date __1/22/07__     IntegraSys Initials ____  Date __3/7/07__

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 45 of 60   PageID #: 53

## Virtual Branch® Services

**IntegraSys Responsibilities:**

1. IntegraSys will provide IntegraSys Virtual Branch Services directly to Credit Union customers ("Members") on Credit Union's behalf. In the course of providing IntegraSys Virtual Branch Services to a particular Member, Credit Union authorizes IntegraSys to choose the most effective method to process a Member payment instruction, including, without limitation, electronic, paper or other draft means.

2. IntegraSys will be responsible for storage, telecommunications, operating system maintenance, performance and security monitoring of IntegraSys Virtual Branch Services at IntegraSys' site. IntegraSys will use reasonable efforts to make the IntegraSys Virtual Branch Services available to Credit Union 24 hours a day, 7 days a week, subject to scheduled maintenance, scheduled downtime and causes beyond the reasonable control of IntegraSys.

3. IntegraSys will notify Credit Union when new services are available. Credit Union may add additional services set forth on **Exhibit G-n** or new services offered by IntegraSys by notifying IntegraSys in writing in accordance with Section 13(f) of the Agreement of its request to purchase the additional or new services at IntegraSys' then current standard charges. Notwithstanding Section 13(b) of the Agreement, upon receipt of Credit Union's notification and IntegraSys' provision of such service to Credit Union, IntegraSys and Credit Union agree that such service will then be subject to the terms of the Agreement and deemed to be included in this Exhibit. IntegraSys will invoice Credit Union for installation set-up fees upon system installation.

4. IntegraSys reserves the right to charge for services that are not implemented within 90 days from the Effective Date when Credit Union is responsible for such non-implementation.

**Credit Union Responsibilities:**

1. Credit Union will provide and make available to IntegraSys appropriate management and technical personnel of Credit Union who will work with IntegraSys and will perform, on a timely basis, the activities referenced in this Exhibit, the responsibility for which is required therein to be assumed by Credit Union. In addition, Credit Union will cooperate with IntegraSys through making available such personnel, management decisions, information, authorizations, approvals and acceptances in order that IntegraSys' performance of the IntegraSys Virtual Branch Services may be properly, timely and efficiently accomplished.

2. Credit Union will complete and perform any and all validation procedures it determines, in its sole discretion, are necessary to authenticate the identity and ensure the financial integrity of a particular Member.

3. With respect to PayIT bill payment services, Credit Union is and shall remain solely and exclusively responsible for any and all financial risks, including, without limitation, insufficient funds, associated with each Member accessing the IntegraSys Virtual Branch Services. IntegraSys shall not be liable in any manner for such risk.

4. Tax payments and court ordered payments ("Exception Payments") may be scheduled through PayIT bill payment services; however, such payments are scheduled at Credit Union's risk and in no event shall IntegraSys be liable for any claims or damages resulting from the scheduling of Exception Payments. Credit Union acknowledges that IntegraSys has no obligation to research or resolve any claim resulting from an Exception Payment. All research and resolution for any misapplied, mis-posted or misdirected payments shall be the sole responsibility of Credit Union.

5. Credit Union will comply with all operating instructions that are issued by IntegraSys from time to time. Credit Union agrees that it will use, and will instruct its Members to use, the IntegraSys Virtual Branch Services in accordance with such reasonable rules as may be established by IntegraSys from time to time as set forth in any materials furnished by IntegraSys to Credit Union. Credit Union will be responsible for the supervision, management and control of its use of IntegraSys Virtual Branch Services, including without limitation, implementing sufficient procedures to satisfy its requirements for the security and accuracy of data. IntegraSys is entitled to rely upon and act in accordance with any instructions, guidelines or information provided by Credit Union which are given by persons having actual or apparent authority to provide such instructions, guidelines or information.

6. With respect to PayIT bill payment services, Credit Union shall designate a bank settlement account such as a federal reserve account or a separate clearinghouse account ("Settlement Account") which will be used by IntegraSys to settle, in the aggregate, all financial transactions requested via the IntegraSys Virtual Branch Services by each Member. In certain instances, financial transactions requested via the IntegraSys Virtual Branch Services will be settled utilizing a Member's account as opposed to the Settlement Account. IntegraSys shall be responsible for the posting of credits and/or debits to Member accounts. Credit Union shall be solely responsible for the auditing and balancing of Member accounts.

### Virtual Branch® Banking Services[1]

**VIRTUAL BRANCH® BANKING CHARGES**
**One Time Set-Up Fees:**
- ☐ Home Banking Set-up Fee:                                             Previously paid
  - Host Installation, Testing, and Certification
  - Virtual Branch Software License Fee
  - Virtual Branch Installation
  - Credit Union Unique Site Branding

**Recurring Fees:**

- ☐ Credit Unions less than 1,500 Members         $275.00 per month
- ☐ Credit Unions 1,501 to 3,000 Members          $475.00 per month
- ☒ Credit Unions 3,001 to 6,000 Members          $675.00 per month
- ☐ Credit Unions 6,001 to 9,000 Members          $975.00 per month
- ☐ Credit Unions over 9,000 Members              $1,275.00 per month

| **VIRTUAL BRANCH® LINKS CHARGES*** | Set-Up Fee | Monthly Fee |
|---|---|---|
| ☐ Credit Card Information System | | |
| ☐ Mortgage Database | | |
| ☒ Share Draft Image Retrieval | Previously paid | $150.00 |
| ☐ Share Draft Reorder | | |
| ☐ Electronic Statement | | |
| ☐ Tax Preparation Software | | |

*\*Links availability may vary by core data processor*

**MISCELLANEOUS VIRTUAL BRANCH® SERVICES CHARGES**
- ☐ Web Trends Reporting
- ☐ Online Check Deposit (Charlotte only)
- ☐ Balance Alerts
- ☒ Enhanced Authentication:

| Current Tier | # of Virtual Branch Users | Set-Up Fee | Annual Fee** |
|---|---|---|---|
| ☒ | 0 - 500 | Previously paid | $0.30 per Virtual Branch User |
| ☐ | 501 – 2,000 | | $0.30 per Virtual Branch User |
| ☐ | Over 2,000 | | $0.30 per Virtual Branch User |

*\*\*Annual Fees are due in advance. The Annual Fee is computed based on the number of Virtual Branch Users using the Enhanced Authentication service on each anniversary date.*

---

[1] IntegraSys shall invoice Credit Union monthly in advance for fixed fees and recurring monthly fees, and on a current basis for all transaction and customer fees and third party services.

Copper Basin FCU _Exhibits V2006_2_0                Page 27 of 38

## Virtual Branch® Bill Payment Services[2]

VIRTUAL BRANCH® BILL PAYMENT CHARGES ☐ PayIT ACH  ☐ PayIT Online  ☐ Web Pay

**One-time Set-up Fees:**
☐ Virtual Branch Bill Pay Installation Set-up Fee
☐ Network Set-up Fee *(online only)*

**Recurring Fees:**
☐ Bill Pay User Fee
☐ Site Maintenance and Hosting
☐ Network Access Fee *(online only)*
☐ Bill Pay Transaction Fee *(online only)*
☐ Bill Payment Investigation Fee
☐ Stop Payment Request Fee

---

[2] IntegraSys shall invoice Credit Union monthly in advance for fixed fees and recurring monthly fees and on a current basis for all transaction and customer fees and third party services.

### Virtual Branch® Lending Services[3]

**VIRTUAL BRANCH® LENDING CHARGES**

☐ **Basic Installation Set-Up Fees:**
    Customization for up to five loan types
    Customization of up to five additional loan types

☐ **Basic Monthly Fees:**
    Hosting of Virtual Branch Lending Application Fee
    Processing of Submitted Loan Applications Fee:

| | | |
|---|---|---|
| 0 - 50 | TBD | Per application |
| 51 - 100 | TBD | Per application |
| 101 - 200 | TBD | Per application |
| 201 + | TBD | Per application |

☐ **Add: Instant Pre-Approval Installation Set-Up Fees (includes credit bureau reports)**
    Decision Matrix
    Additional Matrices

☐ **Instant Pre-Approval Monthly Hosting Fee:**

☐ **Instant Pre-Approval Processing Fee:**
    *Processing Fee includes Credit Bureau report retrieval*

☐ **Secure Public Viewer**
    Installation Set Up Fees
    Documentation Fees *(minimum of 25 documents per month)*

---

[3] IntegraSys shall invoice Credit Union monthly in advance for fixed fees and recurring monthly fees and on a current basis for all transaction and customer fees and third party services.

## ConfirmIT™

Credit Union agrees with IntegraSys as follows:

1. <u>Services</u>. In addition to the Services set forth in the Agreement, IntegraSys will provide Credit Union the ConfirmIT™ services set forth in this <u>Exhibit N</u> ("ConfirmIT™").

2. <u>Fees</u>. Credit Union shall pay IntegraSys the fees and other charges for ConfirmIT™ specified in <u>Exhibit N – 2</u>. IntegraSys shall invoice Credit Union monthly in advance for fixed fees and recurring monthly fees, and on a current basis for all transaction and customer fees and third party services. Except as otherwise set forth in this <u>Exhibit N</u>, fees may be increased annually on the anniversary date of this Exhibit upon 30 days' notice to Credit Union.

3. <u>Equipment and Supplies</u>. Credit Union shall obtain and maintain at its own expense such equipment as may be necessary or appropriate to facilitate the proper use and receipt of ConfirmIT™. Credit Union shall be responsible for paying for all supplies to be used in connection with ConfirmIT™.

4. <u>Effect of Termination</u>. In the event IntegraSys' agreement with its third party service provider shall expire or terminate for any reason, IntegraSys may terminate this <u>Exhibit N</u> immediately upon notice to Credit Union. Upon any termination or expiration of this <u>Exhibit N</u>, Credit Union shall continue to be responsible for fees related to ConfirmIT™ unless IntegraSys receives written notice to delete Credit Union files from the IntegraSys System. Credit Union shall continue to be responsible for all data communications and modem fees until (i) all circuits are disconnected and the telecommunications company ceases invoicing IntegraSys; and (ii) IntegraSys receives back all equipment supplied to Credit Union by IntegraSys.

5. <u>Trademark and Content License</u>. Credit Union hereby grants to IntegraSys a non-exclusive, non-assignable right to use Credit Union's

trademarks, trade names, service marks, service names (collectively, "Trademarks"), and Content (as defined below) in connection with IntegraSys' provision of ConfirmIT™. Credit Union will indemnify and hold harmless IntegraSys, its officers, directors, employees, designated supplier, and affiliates against any claims or actions arising out of IntegraSys' use of Trademarks and/or Content.

6. <u>Regulatory Compliance</u>. Credit Union shall use ConfirmIT™ only in conjunction with lawful purposes. Credit Union agrees not to use ConfirmIT™ for any activities in violation of any applicable laws or regulations, including, but not limited to, wrongful transmission of copyrighted material, sending of threatening or obscene materials, or misappropriation or exportation of trade or national secrets.

7. <u>Credit Union Warranties</u>. Credit Union represents and warrants that (a) any work, content, or identification verification ("Content") provided to IntegraSys is either original or that Credit Union has the legal right to provide such Content; and (b) Content does not impair or violate any intellectual property or other rights of IntegraSys or any third party. Credit Union will indemnify and hold harmless IntegraSys, its officers, directors, employees, designated supplier, and affiliates against any claims or actions arising out of any breaches of the foregoing; or any improper use of information gathered through any co-branded site as part of ConfirmIT™. Credit Union acknowledges that IntegraSys shall not monitor, review, or approve any Content.

<u>Technical Support</u>. Credit Union agrees to provide all end user technical support. IntegraSys will provide "second level" Technical Support to Credit Union's user support representatives. "Technical Support" means IntegraSys will take an initial technical support inquiry from Credit Union and initiate the troubleshooting process. IntegraSys shall use commercially reasonable efforts to determine the source of technical support

issues, and to remedy the issue. Technical Support    is  available  as  described  in  this  Exhibit N.

Credit Union Initials __BP__ Date __1|22|07__   IntegraSys Initials __X__   Date __3/7/07__

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 52 of 60   PageID #: 60

## ConfirmIT™

**IntegraSys Responsibilities:**

1. IntegraSys will provide Credit Union with the following services for the fees identified in Exhibit N – 2:

| ConfirmIT™ |
| --- |
| Identity Verification (IDV) |
| Web Delivery of New Account Data |
| Processing of the New Account Data |
| Maintenance of the Data Repository |
| OFAC Screening, bi-weekly |
| FinCEN Screening |
| Reports |
| Administrative Functionality |
| Training |

2. IntegraSys shall provide use of ConfirmIT™ that IntegraSys controls in a 7 x 24 environment, subject to reasonable downtime for maintenance. IntegraSys will attempt to limit its downtime to those hours of operation least impacted by customer usage, when such options are available.

3. Credit Union acknowledges and understands that use of ConfirmIT™ may be subject to unavailability due to congestion or overload on public circuits supplied by third parties or due to downtime by such third parties.

4. IntegraSys agrees to provide second level support to Credit Union in the event Credit Union is unable to resolve issues related to the normal operation of ConfirmIT™ services adequately during normal business hours. IntegraSys' sole obligation is to provide timely response to Credit Union for requests for support.

5. IntegraSys itself or through its vendor or subcontractor (in the sole discretion of IntegraSys), will provide reasonable free training via the Internet during the term of this Exhibit N, provided that such training is provided by IntegraSys' vendor or subcontractor during such term.

**Credit Union Responsibilities:**

1. Credit Unions of IntegraSys will be responsible for sending new customer data for OFAC and FinCEN validation in order to research and resolve any possible matches. A message is returned that provides a "pass" or "fail" answer on the information submitted. If a "fail " message is returned, the message includes a notation of the information that did not match or the name submitted appeared on one more of the government lists. Credit Union also has the option to log on to ConfirmIT via the Internet to research and resolve any possible matches for OFAC.

2. Credit Union will review and approve all applications for use of ConfirmIT™, using any validation procedures Credit Union determines.

3. Credit Union is, and shall remain, solely and exclusively responsible for any and all financial risks associated with its employees and/or customers (as applicable) accessing ConfirmIT™.

4. Credit Union will use, and will instruct its employees to use, ConfirmIT™ in accordance with such reasonable rules as may be established by IntegraSys from time to time as set forth in any materials furnished by IntegraSys to Credit Union.

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 53 of 60   PageID #: 61

5. Credit Union is expressly prohibited from extending any warranty or warranties on IntegraSys' behalf to any person.

6. Credit Union acknowledges and understands its responsibility and liability as they relate to Credit Union's access to the Internet. IntegraSys assumes no liability or control over the Internet access of Credit Union's on-site systems and remote employee or affiliate access.

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 54 of 60   PageID #: 62

Additional Terms and Conditions

Notwithstanding anything set forth in the Agreement, the following additional terms and conditions shall apply to use of ConfirmIT™ provided pursuant to this Exhibit N. These Additional Terms and Conditions are required by IntegraSys' third party subcontractor and shall not be modified by the Credit Union. In the event of a conflict between the Additional Terms and Conditions of this Exhibit N and the Agreement, these Additional Terms and Conditions shall control, unless otherwise specified below; provided however, to the extent comparable provisions in the Agreement are more restrictive than those set forth below, the provisions in the Agreement shall control.

1. License of Information.

(a) General. IntegraSys grants a non-exclusive license to Credit Union to use the information provided through ConfirmIT™ only as described in this Exhibit N. Credit Union may reproduce or store the information obtained through ConfirmIT™ solely for each of their respective uses in accordance with this Exhibit N, and will hold all information licensed under this Exhibit N in strict confidence and will not reproduce, reveal or make it accessible in whole or in part, in any manner whatsoever, to any others unless required by law, or unless Credit Union first obtains IntegraSys' written consent; provided, however, that Credit Union may discuss information in a report with the subject of that report when Credit Union has taken adverse action against the subject based on the report. Credit Union will not provide a copy of the report to the consumer, except as may be required or permitted by law or approved in writing by IntegraSys, except in any state where this contractual prohibition would be invalid. Credit Union will refer the consumer to IntegraSys whenever information contained in a report is in dispute. Credit Union will not interpret the failure of IntegraSys to return information regarding the consumer's identity as a statement regarding that consumer's identity, because that failure may result from one or more factors unrelated to identity validation. Credit Union warrants that it is the end user of the information.

(b) Restrictions. Credit Union will not use any alert messages generated by ConfirmIT™ as a part of the eligibility determination for granting credit, insurance or employment. Credit Union acknowledges that any such alert message is merely an indication that the application information should be further verified prior to a business decision. Credit Union may only use the data from ConfirmIT™ for the specific transaction for which the alert message is provided. ConfirmIT™ is proprietary and Credit Union may not use ConfirmIT™ as a component of any database or file built or maintained by Credit Union. Credit Union understands that the information supplied by ConfirmIT™ may or may not apply to the consumer who has made the application to Credit Union.

(c) International Supplier. Credit Union may from time to time request ConfirmIT™ for consumers having identity information accumulated outside of the United States. If that information is available under the terms of this Exhibit N, IntegraSys may facilitate Credit Union's access of that information through a IntegraSys affiliated company, affiliate or independent supplier (collectively, "International Supplier"). Credit Union's receipt and use of that information will be subject to all the terms of this Exhibit N and this Exhibit N will be deemed to be a separate agreement between Credit Union and the applicable International Supplier directly, with IntegraSys having entered into that agreement with Credit Union on behalf of the International Supplier. Credit Union further recognizes that IntegraSys will merely facilitate access to the information. In addition, Credit Union acknowledges that the receipt and use of that information may be governed by various laws and regulations of the country, state or province in which the subject resides or from which the information originates, and Credit Union will comply with those applicable laws and regulations regarding Credit Union's receipt and use of that information.

(d) Third Party Beneficiary. Notwithstanding anything set forth in the Agreement to the contrary, Credit Union agrees that IntergraSys' third party subcontractor is designated as a third party beneficiary of this Exhibit N as it relates to the use of the subcontractor's software and/or access to the subcontractor's system as contemplated by the terms of this Exhibit N.

Case 1:11-cv-00203-CLC-WBC   Document 1-1   Filed 08/10/11   Page 55 of 60   PageID #: 63

2. <u>Compliance with Laws</u>. Credit Union will comply with the provisions of the Fair Credit Reporting Act (the "FCRA"), the Federal Equal Credit Opportunity Act, as amended (the "ECOA"), all state law counterparts of them, and all applicable regulations promulgated under any of them, including, without limitation, any provisions requiring adverse action notification to the consumer. In addition the Credit Union will comply with the following:

    (a) <u>Credit Union Use Limitations</u>. Credit Union acknowledges that IntegraSys and/or any third party involved in the provision of ConfirmIT™ or information contained therein ("Third Parties") retain all right, title and interest under applicable contractual, copyright and related laws in the databases and materials contained therein used to provide ConfirmIT™, and Credit Union shall not use such materials in any manner that is inconsistent with such right, title and interest and notify IntegraSys of any threatened or actual infringement thereof. Credit Union shall notify IntegraSys immediately of any changes to the information contained in Credit Union's application for ConfirmIT™. Credit Union shall at no time represent that it is the authorized agent or representative of IntegraSys or any Third Party providing information or any part of ConfirmIT™.

    (b) <u>Credit Union Use Limitations – Fair Credit Reporting Act</u>. Credit Union agrees not to use ConfirmIT™ or any data, which is the subject of this <u>Exhibit N</u>, for consumer credit purposes, consumer insurance underwriting, employment purposes, tenant screening purposes, or for any other purpose(s) covered by the FCRA or other similar and applicable law.

    (c) <u>Credit Union Use Limitations – Driver's Privacy Protection Act</u>. Credit Union agrees to use ConfirmIT™ and any data received therefrom, in strict conformance with the Federal Drivers Privacy Protection Act (18 U.S.C. Section 2721 et seq.) or other similar and applicable law.

    (d) <u>Credit Union Use Limitations – Gramm-Leach-Bliley Act</u>. Credit Union agrees to use ConfirmIT™ and any data received therefrom, which is the subject of this Agreement, in strict conformance with the Gramm-Leach Bliley Act (U.S.C. Title 15, Chapter 94, Section 6801 et seq.) and similar state statutes, if applicable.

    (e) <u>Misuse of Services or Information</u>. Credit Union agrees to take appropriate measures so as to protect against the misuse of ConfirmIT™. Credit Union agrees that IntegraSys may, if it is concerned about Credit Union's use, temporarily suspend Credit Union's access for up to 10 business days pending an investigation of such use. Credit Union agrees to cooperate fully with any and all investigations. If misuse is confirmed through investigation, IntegraSys may immediately terminate this Agreement.

    (f) <u>Changes in Use or Access</u>. IntegraSys may, at any time, impose restrictions and/or prohibitions on the Credit Union's use of ConfirmIT™ or certain data. Credit Union understands that such restrictions or changes in access may be the result of a modification in IntegraSys or one of its Third Parties' policies, a modification of Third Party agreements, a modification in industry standards, or a change in law or regulation. Upon written notification by IntegraSys of such restrictions, Credit Union agrees to comply with such restrictions.

3. <u>Data Security</u>. This Section 3 applies if Credit Union will access ConfirmIT™ via personal computer or direct access terminals (in either case, a "DAT"). Credit Union will: (a) restrict access to each DAT to those employees who have completed training offered by IntegraSys, (b) inform users of ConfirmIT™ of Credit Union's FCRA and other obligations with respect to the access and use of consumer reports, (c) ensure that neither trained operators nor other employees will obtain any reports for personal reasons or provide them to any third party, and (d) take all necessary measures to prevent unauthorized use of the DAT by any persons other than the trained operators for permissible purposes. Those measures will include limiting knowledge of the Credit Union number(s), access codes, and telephone access number(s) IntegraSys provides, and any DAT user passwords Credit Union may use, to train DAT operators and other employees with a need to know, changing the user passwords on the DAT at least every 180 days, or sooner if an employee trained to operate the DAT is no longer responsible for accessing reports, or if Credit Union suspects an unauthorized person has learned the password, and using all security features in the software and hardware Credit Union uses to access ConfirmIT™ or the IntegraSys System. Credit Union will immediately notify IntegraSys if Credit Union suspects or knows of unauthorized access to the IntegraSys System. Credit Union will not ship hardware or

software between Credit Union's locations or to third parties without deleting all Credit Union number(s), access codes, telephone access number(s) and user passwords. Credit Union will inform trained DAT users and other employees with a need to know that unauthorized access to consumer reports may subject them to civil and criminal liability under the FCRA punishable by fines and imprisonment. IntegraSys may suspend or terminate DAT service to Credit Union at any time IntegraSys reasonably believes that Credit Union has violated this Section.

4. Indemnification. Credit Union hereby agrees to protect, indemnify, defend and hold harmless IntegraSys and all Third Parties from and against any and all costs, claims, demands, damages, losses and liabilities (including actual attorneys' fees) arising from or in any way related to use of information by Credit Union (or any third party receiving such information from or through Credit Union) furnished by or through ConfirmIT™ by IntegraSys to the extent such costs, claims, demands, damages, losses or liabilities (including actual attorneys' fees) do not result from the grossly negligent acts or omissions of IntegraSys or Third Parties. Provisions hereof related to release of claims, indemnification, use of information and ConfirmIT™, payment for ID Verification Service and disclaimer of warranties shall survive any termination of this Agreement.

5. Warranty, Indemnification and Limitation of Liability. NEITHER INTEGRASYS, ITS AFFILIATES, DIRECTORS, OFFICERS, AGENTS, EMPLOYEES, CONTRACTORS, LICENSORS, VENDORS OR THIRD PARTIES, NOR ANY PERSONS OR ENTITIES AFFILIATED WITH THE FOREGOING (COLLECTIVELY, "INTEGRASYS AFFILIATES") SHALL BE LIABLE TO CREDIT UNION OR TO ANY PERSON CLAIMING THROUGH CREDIT UNION OR TO WHOM CREDIT UNION MAY HAVE PROVIDED SERVICE-RELATED INFORMATION FOR ANY LOSS, DAMAGE OR INJURY ARISING OUT OF OR CAUSED, IN WHOLE OR IN PART, BY THEIR NEGLIGENT ACTS OR OMISSIONS IN PROCURING, COMPILING, COLLECTING, INTERPRETING, REPORTING, COMMUNICATING, OR DELIVERING THE SERVICE OR IN OTHERWISE PERFORMING THIS AGREEMENT. CREDIT UNION ACKNOWLEDGES THAT EVERY BUSINESS DECISION INVOLVES THE ASSUMPTION OF RISK, AND THAT THE INTEGRASYS AFFILIATES DO NOT UNDERWRITE THAT RISK IN ANY MANNER WHATSOEVER. IF, NOTWITHSTANDING THE FOREGOING, LIABILITY CAN BE IMPOSED ON A INTEGRASYS AFFILIATE, THEN CREDIT UNION AGREES THAT THE AGGREGATE LIABILITY FOR ANY AND ALL LOSSES, DAMAGES OR INJURIES ARISING OUT OF SAME, REGARDLESS OF THE CAUSE (INCLUDING NEGLIGENCE), AND REGARDLESS OF THE NATURE OF THE LEGAL OR EQUITABLE RIGHT CLAIMED, SHALL NOT EXCEED, IN THE AGGREGATE, THE FEES PAID FOR THE SERVICE TO WHICH THE CLAIM RELATES BY CREDIT UNION DURING THE 6 MONTHS IMMEDIATELY PRECEEDING THE FIRST SUCH CLAIM. CREDIT UNION FURTHER COVENANTS AND PROMISES THAT IT WILL NOT SUE A INTEGRASYS AFFILIATE FOR AN AMOUNT GREATER THAN SUCH SUM EVEN IF THE INTEGRASYS AFFILIATE WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. CREDIT UNION SHALL NOT SEEK NOR BE ENTITLED TO RECOVER PUNITIVE, CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY OR SPECIAL DAMAGES, INCLUDING LOST PROFITS IN ANY SUIT AGAINST A INTEGRASYS AFFILIATE. THE FOREGOING WAIVERS, DISCLAIMERS AND LIMITATIONS OF LIABLITY ARE PROVIDED BY CREDIT UNION IN CONSIDERATION OF THE RECEIPT OF THE CONFIRMIT AT THE RATES CHARGED UNDER THIS AGREEMENT, WHICH ARE FAR LOWER THAN WOULD BE AVAILABLE TO CREDIT UNION ABSENT THOSE WAIVERS, DISCLAIMERS AND LIMITATIONS OF LIABILITY. THE INTEGRASYS AFFILIATES DO NOT MAKE, AND FULLY DISCLAIM, ANY WARRANTY, EXPRESS OR IMPLIED. THE INTEGRASYS AFFILIATES DO NOT GUARANTEE OR WARRANT THE CORRECTNESS, COMPLETENESS, CURRENTNESS, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE SERVICE OR THE COMPONENTS THEREOF. IN NO EVENT SHALL AN INTEGRASYS AFFILIATE BE LIABLE FOR ANY DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, HOWEVER ARISING, INCURRED BY CREDIT UNION.

6. Confidentiality. Credit Union agrees to hold in confidence all information received through ConfirmIT™, except as specifically permitted in this Exhibit N. Each recipient of confidential information will hold those materials and that information in strict confidence, and will restrict its use of those materials and that information to the purposes anticipated in this Exhibit N. If the law or legal process requires recipient to disclose confidential and proprietary data, recipient will notify the disclosing party of the request. Thereafter, the disclosing party may seek a protective order or waive the confidentiality requirements of this Exhibit N or

the Agreement, provided that recipient may only disclose the minimum amount of information necessary to comply with the requirement. Recipient will not be obligated to hold confidential any information from the disclosing party which (a) is or becomes publicly known, (b) is received from any person or entity who, to the best of recipient's knowledge, has no duty of confidentiality to the disclosing party, (c) was already known to recipient prior to the disclosure, and that knowledge was evidenced in writing prior to the date of the other party's disclosure, or (d) is developed by the recipient without using any of the disclosing party's information. Each party will indemnify, defend and hold harmless the other from and against any direct and actual loss, cost, liability and expense (including reasonable attorneys' fees) resulting from the indemnifying party's breach of this Section 6.

7. Assignment. Credit Union may not assign its rights or obligations under this Exhibit N without the written consent of IntegraSys; provided, however, unless prohibited by the terms of the Agreement, Credit Union may assign or transfer this Exhibit N, by operation of law or otherwise, to any person that becomes the successor entity of Credit Union, in connection with a change of control (which shall include a direct or indirect transfer of all or substantially all of Credit Union's stock or assets to a third party, a merger, reorganization or other such transaction, or any such transaction by a parent corporation of Credit Union) and IntegraSys consents to such assignment or transfer in advance. Subject to the foregoing, this Exhibit N shall be binding upon all successors and assigns. The legal successor(s) resulting from such aforementioned assignment or transfer shall succeed to and be bound by this Exhibit N. IntegraSys may subcontract any of the work, services, or other performance required of IntegraSys under this Exhibit N without the consent of Credit Union.

8. Termination. If the continued provision of all or any portion of ConfirmIT™ becomes impossible, impractical, or undesirable due to a change in applicable federal, state or local laws or regulations, as determined by IntegraSys in its reasonable judgment, IntegraSys may either (a) cease to provide the affected ConfirmIT™ services within, or pertaining to persons residing within, the affected jurisdiction, or (b) establish new prices which will apply to the affected ConfirmIT™ services when provided or delivered within, or pertaining to persons residing within, the affected jurisdiction, which prices will be reasonably calculated to cover the costs incurred by IntegraSys in complying with the applicable laws or regulations and will become effective on the date specified in such notice unless Credit Union objects in writing, in which case IntegraSys may exercise its rights under clause (a) above. IntegraSys will attempt to provide written notice of its actions as far in advance of the effective date as is reasonably possible under the circumstances.

## ConfirmIT™ Fees

**One-Time Set-up Fee (Includes Training):**     Previously paid

**Monthly Recurring Fees:**

Credit Union's ConfirmIT™ Monthly Fee is calculated utilizing the chart set forth below:

| Current Tier | Number of Members | Monthly Fee* | Free IDV Transactions per Month | IDV Transaction Fee Charged after Free IDV's |
|---|---|---|---|---|
| ☒ | 0 – 10,000 | $100.00 | 10 | $2.50 each |
| ☐ | 10,001–30,000 | $150.00 | 20 | $2.50 each |
| ☐ | Over 30,000 | $200.00 | 30 | $2.50 each |

*Includes the following:*
- Unlimited OFAC Screenings
- Unlimited 314(a) Screenings
- Maintenance of the Data Repository
- Administrative Functionality
- Annual Maintenance



UNITED STATES POSTAGE
PITNEY BOWES
$ 007.830
02 1P
0003064371    JUL 13 2011
MAILED FROM ZIP CODE 37450



7007 0710 0005 5727 1436

McKoon & Williams
ATTORNEYS & COUNSELORS AT LAW
1300 REPUBLIC CENTRE
633 CHESTNUT STREET
CHATTANOOGA, TENNESSEE 37450-1303

**RETURN RECEIPT REQUESTED**
TO: Fiserv Solutions, Inc. d/b/a Integrasys
c/o Prentice Hall Corporation System
2908 Poston Avenue
Nashville, TN 37203