UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| COPPER BASIN FEDERAL CREDIT | ) | |
|---|---|---|
| UNION and CUMIS INSURANCE | ) | |
| SOCIETY INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:11-CV-203 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| FISERV SOLUTIONS, INC. | ) | |
| d/b/a INTEGRASYS | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the Court are Plaintiffs Copper Basin Federal Credit Union ("Copper Basin") and CUMIS Insurance Society, Inc. ("CUMIS") and Defendant Fiserv Solutions, Inc. ("Defendant"). Plaintiffs originally filed a complaint in the Chancery Court for Polk County, and Defendant removed the case to this Court (Court File No. 1). Plaintiffs filed a motion objecting to removal and asking the Court to remand this case to Tennessee state court (Court File No. 10). Defendant responded to Plaintiffs' motion (Court File No. 16), and Plaintiffs in turn replied to that response (Court File No. 18). For the reasons given below, the Court will **GRANT** the Plaintiffs' motion and will **REMAND** the case to the Polk County Chancery Court.[1]

## I. FACTS AND PROCEDURAL HISTORY

---

[1] After removing the case to this Court but before Plaintiffs filed their motion to remand, Defendant filed a motion to dismiss (Court File No. 3). Because the Court will grant the Plaintiffs' motion and remand the case to state court, the Court will not consider Defendant's motion to dismiss (Court File No. 3).

Prior to this dispute, Copper Basin and Defendant had a longstanding commercial relationship.[2] Since approximately 1985, Copper Basin, a credit union serving any and all individuals with a connection to Polk County, Tennessee or Fannin County, Georgia, used Defendant, a provider of technology services to the financial sector, including credit unions, as its sole technical support and web defense firm. Copper Basin, which is incorporated under federal law, has its principal place of business in, and therefore is a citizen of, Tennessee. Defendant is incorporated under the laws of Wisconsin, where it also has its principal place of business.

According to Plaintiffs' complaint, Copper Basin and Defendant most recently renewed their contract in 2007. As part of its technical support and web defenses services, Defendant required Copper Basin to purchase certain anti-virus software, which Copper Basin did purchase. Defendant apparently maintained exclusive access to this software; Copper Basin employees did not have passwords for the software[3] and were otherwise unable to access it. When the anti-virus software subscription came up for renewal in May 2009, Copper Basin timely renewed. Copper Basin informed Defendant it had renewed its anti-virus software subscription at Defendant's insistence.

In the month before Copper Basin's renewal of its anti-virus software, Copper Basin purchased a Credit Union Bond ("Bond") issued by CUMIS (Court File No. 10, ex. 1).[4] Effective

---

[2] The facts recounted here are drawn primarily from Plaintiffs' complaint.

[3] Although Plaintiffs' complaint alleges Copper Basin did not have passwords to access the anti-virus software, the complaint also notes Copper Basin was at a later date "able to access the system after attempts at guessing the password that had been established by [Defendant]" (Court File No. 1, Complaint, ¶ 21).

[4] The parties dispute whether evidence attached to Plaintiffs' motion to remand is properly before the Court. As discussed *infra*, the Court will, consistent with other district courts in this Circuit as well as caselaw from other Circuits, "pierce the pleadings" to consider factual evidence to determine whether true diversity exists.

April 19, 2009, this Bond covered, *inter alia*, computer attacks (Court File No. 10, ex. A, ¶ 3). CUMIS is a mutual insurance company organized under the laws of Wisconsin, and is, for purposes of diversity jurisdiction, a citizen of that state.

In July 2009, Copper Basin suffered computer problems that eventually led to this lawsuit. First, in early July, Copper Basin employees complained to Defendant about an unusual number of "pop-up" advertisements appearing on their computers. Defendant twice remotely accessed Copper Basin's computers in order to correct this problem, and subsequently informed Copper Basin the problem had been fixed. Second, Copper Basin's computer system was hacked in mid-July. The hackers, using software to access user names and passwords in Copper Basin's computer system, originated a series of transfers from Copper Basin's account with Volunteer Corporate, a Nashville-based credit union, to privately-owned accounts throughout the United States. Copper Basin employees discovered the missing funds on July 15, 2009, and immediately contacted Volunteer Corporate and Defendant.

When Defendant did not immediately respond, Copper Basin was successfully able to access the anti-virus software by guessing the passwords. Upon accessing this software, Copper Basin discovered the anti-virus software had not been activated by Defendant. A Copper Basin employee clicked the icon to activate the anti-virus software, and the software immediately activated, updating its outdated virus protection and resuming protection of Copper Basin's computer system.

Although Copper Basin, working with Volunteer Corporate, reclaimed some of the illegally transferred funds, it suffered a loss of $544,789.41. Copper Basin then initiated a claim with CUMIS, which determined payment under the Credit Union Bond should be made. On January 7, 2010, CUMIS issued a check to Copper Basin for $539,789.44 (Court File No. 10, ex. 2), which

represented Copper Basin's loss less the $5,000 deductible under the Bond (Court File No. ex. A, ¶ 6). Under the Bond, CUMIS is subrogated against any parties from whom recovery could made as a result of the loss (*id.* at ¶ 7).

On July 12, 2011, Plaintiffs Copper Basin and CUMIS filed suit against Defendant in the Chancery Court of Polk County, Tennessee. Plaintiffs sued Defendant on gross negligence, negligence, and breach of contract theories, and sought compensatory and punitive damages, as well as equitable relief. Plaintiffs' complaint largely alleged the facts described here with one significant exception: the complaint contained only two brief references to CUMIS.[5] Thus, while CUMIS was identified as an insurance company organized under the state of Wisconsin and the holder of rights by subrogation in Copper Basin's claims, the complaint only briefly referred to the Bond and neither referred to nor described CUMIS's payment to Copper Basin. Alleging insufficient facts existed to support CUMIS's interest in the lawsuit, Defendant removed to this Court on the theory CUMIS had been fraudulently joined. A week after removing, Defendant filed on August 17, 2011 a motion to dismiss the case. On August 25, 2011, Plaintiffs, appearing for the limited purpose of contesting removal, moved the Court to remand this case to state court on the ground diversity between the parties did not exist.

---

[5] The second paragraph of the complaint contains the following: "CUMIS is a mutual insurance company organized and existing under the State of Wisconsin. By way of assignment and subrogation, CUMIS is the holder of certain rights, title and interest in and to the claims of [Copper Basin] against [Defendant]" (Court File No. 1, Complaint, ¶ 2). The seven paragraph includes a second reference to CUMIS: "[Copper Basin] acquired a credit union bond . . . from CUMIS to provide coverage in the event of, inter alia, a computer attack on [Copper Basin]'s system. By right of subrogation, CUMIS has acquired a right, title and interest in [Copper Basin]'s claims which are outlined below" (*id.* at ¶ 7).

## II. REMOVAL AND FRAUDULENT JOINDER

A defendant can remove to federal court a case originally filed in a state court outside his home state so long as the there is federal-question or diversity jurisdiction.[6] 28 U.S.C. § 1441. Diversity jurisdiction exists where the amount of controversy exceeds $75,000 and complete diversity exists between the parties. 28 U.S.C. § 1332; *Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010). Complete diversity requires all parties joined in the lawsuit to be citizens of different states, and is determined at the time of the filing of the lawsuit. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir. 2006).

Where the parties are not completely diverse, the district court lacks subject-matter jurisdiction and cannot hear the case. *Saginaw Housing Comm'n v. Bannum*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)). Thus, a lack of complete diversity defeats removal. If, however, the defendant can demonstrate the plaintiff has fraudulently joined a non-diverse party, such fraudulent joinder will not defeat removal. *Jerome-Duncan*, 176 F.3d at 907. As with removal generally, the removing party "bears the burden of demonstrating fraudulent joinder, and any doubts are resolved *against* removal."[7] *Probus v. Charter Commc'ns, LLC*, 234 Fed.App'x. 404, 406 (6th Cir. 2007) (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) (emphasis in original).

---

[6] Because of federalism concerns the removal power implicates, *see Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108-09 (1941), "the removing party bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal," *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007).

[7] A fraudulent joinder claim must be "pleaded with particularity and supported by clear and convincing evidence." *Moore's Fed. Prac.*, Civil § 107.14 [2][c][iv][A] (2011).

5

Fraudulent joinder arises "when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Housing Comm'n*, 576 F.3d at 624; *Probus*, 234 Fed.App'x. at 406 ("In order to determine whether a non-diverse defendant was fraudulently joined, we ask whether the plaintiff had a colorable basis for her claims against that defendant."); *Boladian v. UMG Recordings, Inc.*, 123 Fed. App'x. 165, 167 (6th Cir. 2005) ("To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."); *Jerome-Duncan*, 176 F.3d at 907 ("When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.") (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).[8] In determining whether a colorable claim exists, a court looks to state law. *See Jerome-Duncan*, 176 F.3d at 907. Under state law, the removing party must demonstrate "the *absence of any possibility*" the non-diverse plaintiff could state a claim against the defendant. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (emphasis in original); *cf. Alexander*, 13 F.3d at 949

---

[8] The Court includes this string of citations to indicate the standard for fraudulent joinder in the Sixth Circuit envisions a defendant claiming a plaintiff has fraudulently joined a non-diverse *defendant*. Here, of course, Defendant argues Plaintiff Copper Basin fraudulently joined a non-diverse plaintiff, namely CUMIS. No party has cited a case involving a case involving an allegation of fraudulent joinder where the plaintiff is alleged to have fraudulently joined a non-diverse plaintiff, and the Court has not been able to locate one. *See also* 1 Fed. Proc., L. Ed. § 1:260 (2011) (noting "the fraudulent joinder of a non-diverse *defendant* by a plaintiff does not defeat diversity jurisdiction" and only citing cases involving the alleged fraudulent joinder of non-diverse defendants) (emphasis added in quotation). Although the fraudulent joinder standard as stated by the Sixth Circuit assumes an allegation the plaintiff has fraudulently joined non-diverse defendants, the Court is aware of no reason the standard is not also applicable where the plaintiff is alleged to have fraudulently joined a non-diverse plaintiff. Thus, notwithstanding the somewhat unusual nature of Defendant's fraudulent joinder claim, the Court will apply to the facts before it the standard for fraudulent joinder articulated by the Sixth Circuit.

6

("There can be no fraudulent joinder unless it be clear that *there can be no recovery under the law of the state* on the cause alleged or on the facts in view of the law.") (citation omitted) (emphasis added). Thus, the court looks to the relevant state law pleading standard to determine whether the allegedly non-diverse plaintiff has any possibility of stating a claim against the defendant.[9]

A defendant's motion to remove based on fraudulent joinder differs from a motion to dismiss under Fed R. Civ. P. 12(b)(6) in two important respects. First, even after resolving all issues of law and fact in the plaintiff's favor, the fraudulent joinder standard is "'even more favorable' to plaintiffs than the standard for ruling on a motion to dismiss." *Wolf v. Bankers Life & Cas. Co.*, 519 F. Supp.2d 674, 683 (W.D. Mich. 2007) (citations omitted).[10] Second, while a court considering a motion to dismiss is limited only to the allegations in the complaint and any attachments, a court considering fraudulent joinder may "pierce the pleadings," and consider "summary-judgment evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mut.Ins. Auto Co.*, 44 F.3d 256, 263 (5th Cir. 1995);[11] *Mattingly v. Chartis Claims, Inc.*, No. 11-48, 2011 WL 4402428.

---

[9] Defendant, relying on Federal Rule of Civil Procedure 81, contends the Court should use federal pleading standards when considering whether Plaintiffs' complaint states a colorable state cause of action. This contention is misplaced. Rule 81 explicitly states the Federal Rules of Civil Procedure apply to "a civil action after it is removed from state court." Fed R. Civ. P. 81(c). Here, removal is itself contested, and the Court has found no case standing for the proposition that federal pleading standards apply to consider a plaintiff's complaint under *state* law. Defendant's reliance on *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496 (6th Cir. 2010), is inapposite. In *City of Cleveland*, the Sixth Circuit only applied the federal pleading standard to a motion to dismiss after it had concluded removal was proper. *Id.* at 501-02. Thus, where, as here, the relevant Circuit precedent directs a court to look to state law, and where determining whether a non-diverse plaintiff has stated the possibility of a claim under *state* law is inextricable from the state's pleading requirement, the Court concludes state law provides the relevant pleading standard.

[10] Although the Sixth Circuit has not explicitly recognized this distinction, six other Circuit Courts have. *See Moore's Fed. Prac.*, Civil § 107.14 [2][c][iv][B], at n. 51.1 (citing cases).

[11] Curiously, Defendant relies on *Cavallini* to argue the Court cannot "pierce the pleadings" in this case (*see* Court File No. 16, pp. 3-6). *Cavallini* acknowledged a trial court can pierce the

7

at *2 (E.D. Ky. Sept. 20, 2011) ("In ruling on fraudulent joinder a court may pierce the pleadings.").

**III.   DISCUSSION**

In its notice of removal, Defendant contends Plaintiff Copper Basin fraudulently joined Plaintiff CUMIS for the purpose of destroying diversity jurisdiction. Specifically, Defendant argues the complaint fails to allege a necessary element of CUMIS's subrogation claim: that CUMIS had reimbursed Copper Basin for Copper Basin's loss. Plaintiffs object to Defendant's fraudulent joinder claim by asserting CUMIS has a colorable subrogation claim against Defendant under Tennessee law. To support their argument, Plaintiffs attach an affidavit from a CUMIS Senior Claims Adjustor indicating CUMIS has reimbursed Copper Basin (Court File No. 10, ex. A). Defendant in turn responds this evidence is not properly before the Court. Thus, the Court must first decide the antecedent issue of the evidence it can consider before addressing whether the Defendant has satisfied its burden in the fraudulent joinder claim.

**A. Evidence Before the Court**

Defendant argues the Court cannot consider the affidavit and exhibit attached to Plaintiffs' motion to remand because the Court is limited only to considering those claims stated in the complaint. Defendant further contends any consideration of the documents attached to the Plaintiffs' motion to remand effectively allows Plaintiffs to amend their complaint, which

---

pleadings, but refused to permit plaintiffs to offer new legal theories or new causes of action alleged only in supplementary filings. *Id.* Here, Defendant does not allege–nor does the record bear out–Plaintiffs Copper Basin and CUMIS have sought to introduce new legal theories or new causes of action in the affidavits these Plaintiffs ask the Court to consider.

8

contravenes well-settled law regarding removal. Plaintiffs respond the Court may "pierce the pleadings" to consider the documents attached to their motion to remand for the purpose of deciding the fraudulent joinder issue. Plaintiffs have the better of the argument here.

Defendant is indeed correct that a court deciding whether removal is proper must do so "according to the plaintiffs' pleading at the time of the petition for removal." *Pulllman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). This sensible rule acknowledges the plaintiff as the master of his complaint, but then holds that plaintiff to the choice of parties and claims he has advanced in state court. Thus, the rule articulated in *Pullman* and followed in federal court prohibits a plaintiff who has already filed his complaint from subsequently adding or removing parties or claims solely to defeat federal jurisdiction. If Plaintiffs Copper Basin and CUMIS sought, in their objection to removal and motion to remand, to amend their complaint to advance claims not already made, the Court would be foreclosed from considering that amended complaint.

Plaintiffs Copper Basin and CUMIS have, however, not sought to amend their complaint, and the *Pullman* rule does not apply. Unlike in *Cavallini*–on which Defendant heavily relies– where the Fifth Circuit did not permit the plaintiffs to add new claims to their complaint, Plaintiffs' subrogation claim is clear on the face of the complaint originally filed in state court (*see* Court File No. 1, Complaint, ¶¶ 2, 7). The affidavit and exhibit attached to Plaintiffs' objection to removal do not, as Defendant argues, "effectively amend" Plaintiffs complaint; rather, these documents provide evidentiary support for the plausibility of CUMIS's subrogation claim, which is itself clearly stated in the complaint filed in state court.

9

Although Plaintiffs could have avoided this removal dispute if they had attached these documents to their complaint when filed in state court, they are not prevented from presenting them for the Court's consideration to contest Defendant's removal action. To consider whether Defendant has carried its heavy burden to establish fraudulent joinder, the Court may look outside the pleadings to consider "summary judgment evidence" such as exhibits and affidavits. *See Cavallini*, 44 F.3d at 263. It is precisely this type of evidence Plaintiffs offer for consideration in this case. Accordingly, in deciding the fraudulent joinder issue before the Court, it will take into account the documents attached to Plaintiffs' objection to removal and motion to remand (Court File No. 10, ex A, ex. 1, and ex. 2).

**B. Fraudulent Joinder**

The merits of Defendant's fraudulent joinder claim rest on the assertion Plaintiff CUMIS failed to show it has a subrogation interest because CUMIS had not established it had fully compensated Plaintiff Copper Basin (*see* Court File No. 1, Notice of Removal, ¶¶ 9-10). Such failure would indeed prevent CUMIS from prosecuting its claim under the "made-whole" doctrine in subrogation cases. This doctrine holds "that an insurer's subrogation interest does not arise until the injured party is made whole." *Health Cost Controls, Inc. v. Gifford*, 239 S.W.3d 728, 730-31 (Tenn. 2007) (citing *Wimberly v. American Cas. Co. of Reading*, 584 S.W.2d 200, 203 (Tenn. 1979)). Because subrogation is a claim made in equity, the "made-whole" doctrine guards against the unjust enrichment of a double recovery for insured parties.

The affidavit and exhibits attached to Plaintiffs' objection to removal make clear, however, that CUMIS has indeed made Copper Basin whole. An affidavit from Thomas R. Pitek, a Senior

10

Claims Adjustor for CUMIS, indicates he "had CUMIS issue a check to [Copper Basin] in the amount of $539,789.41, which represented payment for the loss as defined and covered by the terms of the Bond, less the deductible provided for by the Bond" (Court File No. 10, ex. A). A copy of the check for the same amount, dated January 7, 2010, drawn on a CUMIS account and written to the order of "Copper Basin Federal Credit Union" is also attached to Plaintiffs' motion (Court File No. 10, ex. 2). Accordingly, the Court finds, based on this evidence, CUMIS has reimbursed Copper Basin, has satisfied the "made-whole" doctrine, and can thus prosecute its subrogation claim against Defendant.

The Court having made this finding, the fraudulent joinder analysis poses little difficulty. Defendant must show the non-diverse Plaintiff–CUMIS, which, like Defendant, is a Wisconsin citizen–has "no possibility of recovery" against it. 326 F.3d at 647; *cf. Alexander*, 13 F.3d at 949. In addition to construing all facts and law in the light most favorably to Plaintiffs, the Court is to consider the fraudulent joinder standard even more favorably to Plaintiffs than a motion to dismiss. *Wolf*, 519 F.Supp.2d at 683. The Court does not determine whether Plaintiff CUMIS will necessarily succeed on its subrogation claim; instead, the Court merely looks to whether CUMIS has any possibility of recovery on its subrogation claim.

The Court concludes Defendant has failed to show CUMIS has no possibility of recovery on a subrogation theory. A subrogation claim entails making out four elements:

> 1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity.

*3 Law and Prac. of Ins. Coverage Litig.* § 42:12 (2011). Moreover, "proof the insurance contract exists, proof of the loss and resulting payment are generally sufficient to establish the right to subrogation." *Id.* Here, the record clearly establishes the existence of the insurance contract (*see* Court File No. 10, ex. 1) as well as proof of the loss and resulting payment (*see* Court File No. 10, ex. A & ex. 2). Because Defendant has failed to show Plaintiff CUMIS has no possibility of recovery against it on a subrogation theory, Defendant cannot sustain its burden on its fraudulent joinder claim. CUMIS is a proper plaintiff in this lawsuit.

Defendant and Plaintiff CUMIS are both citizens of Wisconsin. Because this case rests only diversity jurisdiction, the Court must remand this case to state court for lack of subject-matter jurisdiction.

## IV. CONCLUSION

For the reasons discussed above, the Court will **GRANT** Plaintiffs' motion to remand (Court File No. 10), and will **REMAND** the case to the Chancery Court for Polk County. There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**